UNITED STATES *v.* O. M. BAXTER (INC.) (No. 3049[1])

[1] T. D. 42868.

United States Court of Customs Appeals, June 11, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Kenneth G. Osborn* and *Fred J. Carter*, special attorneys, of counsel), for the United States.
*Walden & Webster* (*Edward F. Jordan* and *Walter F. Welch* of counsel) for appellee.

[Oral argument May 8, 1928, by Mr. Carter and Mr. Welch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The pertinent portions of paragraphs 410, 1302, and 1313 of the Tariff Act of 1922 read as follows:

PAR. 410. * * * house or cabinet furniture wholly or in chief value of wood, wholly or partly finished, wood flour, *and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, 33⅓ per centum ad valorem.* (Italics ours.)

PAR. 1302. Paper board, *wallboard,* and pulpboard, including cardboard, and leather board or compress leather, *not laminated,* glazed, coated, lined, embossed, printed, decorated, or ornamented in any manner, nor cut into shapes for boxes or other articles and not specially provided for, 10 per centum ad valorem; * * * (Italics ours.)

PAR. 1313. Papers and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes or other articles, plain or printed, but not lithographed, and not specially provided for; paper board and pulpboard, including cardboard and leatherboard or compress leather, laminated, glazed, coated, lined, printed, decorated, or ornamented in any manner; press boards and press paper, all the foregoing, 30 per centum ad valorem; * * *.

The appellant made a number of entries of wallboard, manufactured in Sweden, and in each instance the importation was invoiced and entered as "Pyramid Wall Board." The several protests involved in the decision of this case are set out at the end of the decision of the court below. This cause in the court below was submitted under a stipulation, which is in part as follows:

* * * * * * *

It is further stipulated and agreed that protest 29964–G/11669, together with the report of the collector in the said protest and the appraiser's answer to said protest, are typical of all protests, reports of collectors, and appraisers' answers to all protests involved in this case; and that said protest 29964–G/11669, with accompanying collector's reports and appraisers' reports only need be printed.

Protest 29964–G/11669 is in part as follows:

SIR: Protest is hereby made against your decision as to the rate or amount of duties chargeable on wallboard and your assessment thereof at 33⅓% ad valorem and your liquidation of the entries below named. The reasons for the objection, under the Tariff Act of 1922, are that said merchandise is dutiable at 10% ad valorem under par. 1302, or at 20% ad valorem under par. 1459, or at 25% ad valorem under par. 1303, or at 30% ad valorem under par. 1313, or at the appropriate rate according to the component material of chief value, provided such rate is not greater than the rate assessed, or at 10% or 20% ad valorem under par. 1459.

\* \* \* \* \* \* \*

The collector classified the importations as manufactures in chief value of wood and assessed same for duty at 33⅓ per centum under paragraph 410 of the Tariff Act of 1922. The protest makes several claims, but it is not disputed that the merchandise is, in fact, a manufacture in chief value of wood. But it is claimed, and very earnestly argued in this court, that the merchandise is covered by the *eo nomine* provision of paragraph 1302 as "wallboard \* \* \* not laminated."

The court below, after hearing much evidence, said in its decision:

\* \* \* \* \* \* \*

One fact is clearly settled by the record, viz, that although apparent effort was made to establish a commercial meaning for the term "laminated," different from its ordinary or common meaning, no such different meaning was established. \* \* \*

\* \* \* The weight of all the testimony established, too, we think, that as applied to wallboard the prime purpose of laminating the layers is to obtain rigidity and consequent strength. If such be true, then lamination of the parts of Exhibit 1 was unnecessary, inasmuch as the rigidity and strength thereof were not increased thereby. The evident purpose in placing the paper or pulp covering on the wood was to obtain a perfectly smooth surface.

\* \* \* \* \* \* \*

There is no dispute about the process of manufacture of the imported merchandise. Exhibit 1 is "Pyramid Wall Board" and is taken from the importation. The evidence shows that it is made with a wooden core which consists of quarter-inch slats or narrow boards, laid parallel with each other. On each side of the core is superimposed a layer of cement, which not only holds the strips of boards together but also serves the purpose of cementing to each side of the wooden core a thin layer of paper or pulp, referred to as a paper binder.

It is the contention of the Government that the wallboard is laminated, for the reason that it is built up of five layers of material, to wit, one layer of wood, two layers of cement, and two layers of paper.

The importer insists that the process is not one of lamination, in so far as the whole is made up of three different materials and that the cement is merely used as an adhesive, and that the necessary rigidity of the wallboard is obtained by the use of a wooden core, and that the paper binder is for the purpose of making a smooth

surface and, therefore, is not such a lamination as paragraph 1302 contemplates.

While there is considerable evidence in the record, from competent witnesses, tending to show that in trade and commerce, on and prior to the date of the passage of the Tariff Act of 1922, the merchandise would be regarded as laminated, we think the record as a whole fails to establish a commercial meaning different from the ordinary or common meaning of the term "laminated." The sole question, therefore, presented and argued before this court is: Within the common meaning of the term, is the wallboard under consideration "not laminated"?

There is much testimony in the record directed toward explaining the meaning of the term *"laminated."* Some of the witnesses testified as to its meaning in the trade, where they had heard the word used repeatedly. Others gave their opinion as to the meaning of the word without regard to the trade. Some of the latter had heard the word used in connection with the study of geology, and others, who were engaged in the lumber trade and in handling wallboard, gave their opinion as to the meaning of the word after admitting that they had never heard it used until the day of the trial below.

Evidence tending to prove the common meaning of a term may be received by the court for what it is worth. If received and given weight, it is in the nature of an aid to the court in determining the common understanding of the term and is not controlling, since the common meaning of a term is within the judicial knowledge. In determining the common meaning of a term the court may also be aided by a consideration of competent written authorities on the subject. *American Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18, T. D. 36259; *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T. D. 42219.

The dictionaries and lexicographers ascribe a number of meanings to the term *"laminated,"* some of which follow:

Webster's New International Dictionary:

Laminated. a. Consisting of, or arranged in, layers or thin plates, one upon the other; laminate.

Laminate. a. Shaped like, or consisting of, a lamina or laminæ, or thin plates or layers.

Lamina. n. 1. A thin plate or scale; a layer; a flake; * * *. One of the numerous narrow, thin parallel plates * * * of soft tissue, which cover the pododerm of the walls of the hoof of an animal. * * *. Geol. A very thin layer of a stratified rock.

New English Dictionary, edited by Murray, Bradley & Craigie (Oxford):

Laminated. a. Consisting of, arranged in, or furnished with laminæ; formed or manufactured in a succession of layers of material, as some metallic objects, etc. In armour * * *. *Laminated tubercle;* the nodule of the cerebellum. (Syd. Soc. Lex. 1888.)

Laminate. v. 1. * * * To beat or roll (metal) into thin plates. * * * 2. To separate or split into layers or leaves. * * * 3. To cover or overlay with plates (of metal). * * * 4. To manufacture by placing layer upon layer of material. * * *

Lamina. * * * A thin plate, scale, layer, or flake (of metal, etc.) 1656. Blount *Glossogr. Lamina,* a thin plate of any metal, most commonly such as sculptors use to engrave upon. * * * b. *Anat.,* etc. A thin layer of bone, membrane, or other structure. * * * c. *Geol.* The thinnest separable layer in stratified rock deposits. * * * d. *Bot.* (a) A thin "plate" of tissue, as in the "gill" of a mushroom. * * *

## Funk & Wagnalls New Standard Dictionary:

Laminated. * * * 1. Laminate or laminar. 2. * * * Scaled; applied to reptiles. ·

Laminate. v. 1. To beat, roll, or press into thin sheets, as a metal. 2. To cut or otherwise form into thin sheets, leaves, or plates, as in working horn, celluloid, vulcanite, etc. 3. To cover with plates. II. To become divided into laminae or plates. * * *

Laminate. a. Being or having a lamina; arranged in laminæ.

## The New Century Dictionary and Cyclopedia:

Laminated. * * * Same as *laminate.*

Laminate. v. 1. To form into a lamina or plate; beat out thin (rare) * * * 2. To form with or into laminæ or layers; divide into plates or leaves: as, a *laminating* machine. * * * II. * * * To part or become divided into laminæ; separate into thin layers or plates: As, mica *láminates* on exposure to heat.

Laminate. a. (ML. *Laminatus,* furnished with plates or scales; see the verb). 1. Having the form of a lamina or thin plate; leaf-like: as, the laminate coxae of some beetles. 2. Disposed in, consisting of, or bearing laminæ, layers, or scales; laminar; scaled; scaly: as, *laminate* structure in geology; a *laminate* surface; the *laminate* tarsi of a bird. * * *

Lamina. n. * * * a thin plate of wood, metal, etc., a leaf, layer, etc. A thin plate or scale. Specifically.—(a) A layer or coat lying over another: applied to the plates of minerals, bones, etc. (b) The thinnest distinct layer into which a stratified rock can be separated. See *stratum* and *stratification.* * * *

Wallboard "not laminated" we think means wallboard which is not constituted of lamina or layers. Within the common understanding a thing may be laminated with two or more laminæ, each of which may be composed of a material differing from the others and regardless of the purposes for which it was laminated. However, in determining what Congress meant by the word and what merchandise it intended to exclude by its use in paragraph 1302, the materials used in the lamination and the purposes of the same might, under some circumstances, throw some light upon the question. A consideration of paragraphs 1302 and 1313, which are the only places where the word "laminated" is found in the whole tariff act, convinces us that the word "laminated" was used in its common, ordinary sense. Indeed, no good reason is pointed out anywhere why a laminated wallboard should be made up of lamina

of only one kind of material or be laminated for any particular purpose in order that it be excluded from paragraph 1302.

In the decision of the court below controlling influence was given to the consideration of the fact that the cement and paper layers were unnecessary for the purpose of constituting rigidity and strength. The testimony of some of the witnesses is very positive that without some additional building up the wooden core would not be sufficiently rigid, and that it would warp. An examination of paragraph 1302 would seem to indicate conclusively that Congress, by the use of the words "not laminated, glazed, coated, lined, embossed, printed, decorated, or ornamented in any manner, nor cut into shapes for boxes or other articles" meant to exclude from the paragraph such boards as were elaborately manufactured, like the merchandise at bar. Evidently Congress regarded laminating, glazing, coating, lining, embossing, printing, decorating, and ornamenting as processes in the manufacture of board which would justly subject it to a higher rate of duty, somewhere in the act, under the well-settled legislative policy of assessing higher rates of duty on articles which are advanced by complicated manufacturing processes than the rate of duty applicable to the same article in a less advanced state. See *United States* v. *Riggs*, 203 U. S. 136; *United States* v. *American Shipping Co.*, 13 Ct. Cust. Appls. 346, T. D. 41254.

That the use of the cement and paper in layers was a manufacturing advancement over the thin layer of wood can hardly be questioned. Wallboard, *not laminated*, was conceded by all to be correctly illustrated at the trial below by illustrative Exhibit B, which was a solid compressed or molded mass of tough fibers of cane. Obviously, the characteristic of illustrative Exhibit B which forced the concession that it was "not laminated" was its lack of layers or laminæ.

It is not disputed that the importation is a manufacture of which wood is the component material of chief value. It is also undisputed that the importation is wallboard. It is conceded that if it is not *wallboard, not laminated*, that it was properly classified by the collector, the other claims in the protest not having been argued or discussed here.

We conclude that the merchandise is laminated wallboard and, therefore, is excluded from paragraph 1302, and is a manufacture of which wood is the component material of chief value, and is not specially provided for and is, therefore, dutiable at $33\frac{1}{3}$ per centum ad valorem.

The judgment of the United States Customs Court is *reversed*.

SMITH, J., and BARBER, J., concur in the conclusion.