UNITED STATES *v.* BLEFELD & GOODFRIEND (No. 3972)[1]

United States Court of Customs and Patent Appeals, November 9, 1936

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *John J. McDermott,* special attorney, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellees.

[1] T. D. 48658.

214

[Oral argument October 5, 1936, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, First Division, sustaining the protest of appellees against the Collector of Customs' classification of, and duty assessment upon, certain merchandise consisting of necklaces, under paragraph 1527 (a), Tariff Act of 1930, which necklaces, according to the appraiser, were "composed of beads, of metal, other than gold or platinum * * * valued above 20 cents per dozen pieces, commonly or commercially known as jewelry." It seems to be conceded that the merchandise was assessed with duty equivalent to 110 per centum ad valorem.

During the trial six samples of the merchandise were introduced as exhibits, each of which differs from the others in certain particulars of construction. In width they range from half of an inch to an inch and a half. Exhibits 1, 4, 5, and 6 are closely woven or plaited together, while Exhibits 2 and 3 are more open. In Exhibit 4 the article has a section an inch wide composed of small beads, strung and woven or plaited together, and another section composed of a single strand of larger beads. All of the articles, except the small metal clasps, designed for attaching the ends together when the articles are in use, are composed wholly of opaque beads on strings.

In the protest of the importers it was claimed that the merchandise was properly dutiable at 90 per centum ad valorem under the provisions of paragraph 1529 (a) of the Tariff Act of 1930. It was also claimed that the merchandise was dutiable elsewhere in the act. The trial court sustained the claim under paragraph 1529 (a) and the importers rely solely upon this claim here.

The pertinent provisions of the two competing paragraphs follow:

PAR. 1527 (a). Jewelry, commonly or commercially so known, finished or unfinished * * *

\*     \*     \*     \*     \*     \*     \*     \*

(2) all other, of whatever material composed, valued above 20 cents per dozen pieces, 1 cent each, and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem: *Provided*, That none of the foregoing shall be subject to a less amount of duty than would be payable if the article were not dutiable under this paragraph.

PAR. 1529 (a). Laces, lace fabrics, and lace articles, made by hand or on a lace, net, knitting, or braiding machine, and all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; lace window curtains, veils, veilings, flouncings, all overs, neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps, and *ornaments*; braids, loom woven and ornamented in the process of weaving, or made by hand, or on a lace, knitting, or braiding machine; and fabrics and articles embroidered (whether

or not the embroidery is on a scalloped edge), tamboured, appliquéd, ornamented with beads, bugles, or spangles, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including one row of straight hemstitching adjoining the hem; *all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished* (except materials and articles provided for in paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph), *by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of* filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem. \* \* \* [Italics ours.]

At the trial the importers introduced the testimony of three witnesses and the Government that of two witnesses. The testimony clearly shows that the articles are ready to wear and are bought and sold as necklaces and that they are worn about the neck for their ornamental effect as necklaces are worn, and are not attached to the dress as is a collar. One of importers' witnesses testified that the cards upon which the merchandise was placed contained the term "collarette" printed thereon.

Appellees' counsel at the trial took the position that it was immaterial whether the necklaces at bar were jewelry or not; that they were ornaments, and as such, by reason of the quoted language in paragraph 1529 (a) would not be dutiable as jewelry but as ornaments The same is substantially the position of appellees' counsel in this court.

The trial court definitely found that the articles at bar were necklaces, and that, as such, they were jewelry; that they were ornaments in chief value of beads; and also that they were articles ornamented with beads; and held that by reason of the above quoted and italicized language in paragraph 1529 (a) they were properly dutiable under said paragraph rather than as jewelry under paragraph 1527.

The Government in this court argues that the goods are not ornaments such as are provided for in paragraph 1529 (a), invokes the doctrine of *ejusdem generis*, and points out that for the most part the articles provided for by name in said paragraph 1529 (a) are unlike the imported merchandise at bar. The Government furthermore contends, in effect, that the legislative history indicates that Congress, by the use of the term *ornaments*, never used it in its broad sense so as to include jewelry and everything that ornaments.

The questions here presented are, first, whether or not, upon this record, which includes the exhibits at bar, the cheap, inexpensive bead articles are necklaces and, if so, are they jewelry; second, was the term *ornaments* in said paragraph 1529 (a) intended to be used in such a broad sense as to include such well-recognized articles of jewelry as necklaces. ·

There is no serious contention made here on the part of the Government to the effect that if the necklaces at bar are ornaments, within the meaning of the paragraph, they should not be thereunder classified for duty, and we think that the only issue in the case which requires much discussion is, are the articles *ornaments*. There can be no doubt that if the articles at bar, in a tariff sense, are both ornaments and jewelry, the compelling language in paragraph 1529 (a) would require that they be classified, not under the jewelry paragraph, but as ornaments under paragraph 1529 (a).

We are sure, on this record, that the trial court was not in error in holding that the importations are necklaces and that the necklaces are jewelry. *United States* v. *Kuyper & Co.*, 22 C. C. P. A. (Customs) 536, T. D. 47531; *Stern & Co. (Inc.)* v. *United States*, 20 C. C. P. A. (Customs) 423, T. D. 46260; *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T. D. 42219.

In the *Flory & Co.* case, *supra*, it was held that "* * * It is within the common understanding that necklaces, earrings, brooches, finger rings, and certain pins worn upon the person for adornment are jewelry, and as far as we know always have been and always will be so regarded. * * *" See *American Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18, T. D. 36259.

We are of the opinion that when Congress used the term *ornaments* in paragraph 1529 (a) as it also did in the predecessor paragraph 1430 of the Tariff Act of 1922, it did not intend to include under that term everything that ornamented or everything that was ornamental in character. The dictionary definitions, some of which will be quoted, disclose that the term may be and is used, ofttimes, in a very broad sense, broad enough to include, perhaps, anything which decorates or adorns something else. In Webster's New International Dictionary is found the following:

*ornament, n.* * * * 1. An article of equipment; an adjunct, useful or decorative, as of clothing, furniture, etc. *Archaic*, exc. in ecclesiastical usage.
* * * * * * *
2. That which is added to embellish or adorn; that which adds grace or beauty; an embellishment; a decoration; an adornment. * * *

In a broad sense many kinds of clothing and jewelry are ornaments. Hall decorations, many articles of furniture, pictures, etc., ornament, adorn, and in that sense are ornaments, but we do not think that Congress, in placing the term in the paragraph here involved, along with veils, veilings, flouncings, all-overs, neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps, and braids, used it in that broad sense. The term *trimmings* is found in this paragraph, and that it there has a definite meaning which is not broad enough to include everything that trims

something is too clear to admit of serious controversy. Trimmings are narrow textile goods and are used in trimming wearing apparel and upholstery. (See Tariff Information, cited *infra*.)

The Tariff Commission, when it prepared the Summary of Tariff Information, 1929 (see Vol. 2, pp. 2025 *et seq.*), with respect to paragraph 1430, Tariff Act of 1922, which, so far as the issues here are concerned, is identical with paragraph 1529 of the Tariff Act of 1930, devoted much space to a discussion of things provided for in said paragraph 1430. It there called attention to the fact that the paragraph included lace, braid, embroidery, and other textile articles, defined "trimmings," "veiling," "netting," "edging," "neck ruffling," and other terms, and made the following statement concerning "ornaments" and "trimmings":

> Ornaments include motifs or patterns, also, by Treasury decisions, artificial flowers, for attaching or apliquéing to a fabric for ornamentation. Trimmings are narrow goods used to trim or edge garments or upholstery; they may be woven goods, or braid, or lace.   *   *   *

*Motif* is defined by Webster's New International Dictionary as follows:

> *motif, n.*   *   *   *   2. *Dressmaking.* A decorative appliqué design or figure, as of lace or velvet, used in trimming.

The information furnished Congress contains a vast amount of details concerning the various things provided for in the predecessor paragraph, too lengthy to quote here. Considered in the light of the context of the paragraph in controversy and other paragraphs of the act, and in the light of what Congress, by the enactment of this carefully prepared paragraph, was trying to do, we can not escape the conclusion that Congress did not use the term *ornaments* in such a broad sense as to include the jewelry at bar or many other articles which are ornamental and which ornament.

Without attempting to define the exact limits and scope of the term *ornaments*, it is our view that Congress, when it employed the term in the paragraph, was concerned with bringing under it decorative ornamental articles which were designed to be attached to or super imposed upon other articles, usually textiles, for the purpose of decorating, beautifying, and ornamenting them.

In *Trimming Clearing House* v. *United States*, 18 C. C. P. A. (Customs) 96, T. D. 44064, this court had under consideration ornaments in chief value of different colored beads superimposed in ornamental design upon leather, in one instance, and upon cardboard in the other. The ornaments had been ornamented with beads. There was no issue in that case as to whether or not the articles were, in fact, ornaments. It was stipulated that they were ornaments. Their particular use, whether in the home, on wearing apparel, or elsewhere, was not dis-

closed by the record. The question there which we decided was that the provision for articles in chief value of beads, ornamented with beads, more specifically provided for the merchandise than did the provision for ornaments in chief value of beads.

The importers in this case have argued, in effect, that our decision in *United States* v. *Kuyper & Co., supra,* controls the decision in this case. In the *Kuyper* case we did not have the provision *ornaments* under consideration, and we especially reserved for decision the question as to what was the proper definition of the term *ornaments.* We there held that the beaded articles claimed to be "* * * articles * * * ornamented with beads" were in fact not ornamented. The Government in that case discussed the question of *ejusdem generis* or *noscitur a sociis* and argued that the jewelry articles involved, necklaces, were not *ejusdem generis* or of the same kind as the articles which had been specifically named in the paragraph. Confining our remarks to what was included under "* * * articles * * * ornamented with beads," and in an attempt to answer the Government's said contention with reference to *ejusdem generis* or *noscitur a sociis,* we said:

* * * we see no reason why an article of jewelry, if it were in chief value of beads, and ornamented with beads, should not be dutiable under paragraph 1529 (a). * * *

This was far from suggesting that the article was dutiable under paragraph 1529 (a) as an ornament. This statement went further than it was necessary to go under the issues then before us. We are not here called upon to determine what articles will be taken out of other paragraphs and placed in paragraph 1529 (a) if they are ornamented with beads. The main question here is, are the articles at bar ornaments within paragraph 1529 (a). We think they are not.

For the reasons set out above, we are of the opinion that necklaces such as those at bar are not provided for by the term *ornaments* in paragraph 1529 (a).

The judgment of the United States Customs Court is *reversed.*

### DISSENTING OPINION

GARRETT, Judge: Realizing the futility of dissenting opinions, I shall here confine myself to a brief statement.

That the collarettes involved are ornaments, in some sense, does not admit of question. They have no utilitarian use and are in chief value of beads. That, broadly, they are necklaces may be conceded, but they differ from my conception of an ordinary necklace in that they have considerable width and are made in collar form. They are designed wholly for use as collars. When worn they have all the appearance of collars. It is in evidence that it is usual for the wearer to

select one which harmonizes in color, etc., with the particular dress or costume being worn at the time, and while not designed to be actually attached to the dress in a physical sense, so as to become a part of it, the collar does, in fact, supplement the dress to the same extent that it would were it actually attached thereto as a neck band or as a neck ruffling, the latter of which is provided for *eo nomine* in paragraph 1529 (a) of the Tariff Act of 1930.

As I understand the majority opinion, the conclusion there reached rests upon the application of the rule of *ejusdem generis*, it being concluded from the legislative history cited that the involved ornaments are not *ejusdem generis* with other articles mentioned *eo nomine* in paragraph 1529 (a). Except for the material of which they are composed the articles do seem to me to be *ejusdem generis* with such articles as "neck ruffling," "quillings" and "ruchings," designated *eo nomine* in the paragraph, and since beaded articles in certain forms are clearly provided for *eo nomine* in the paragraph, I had not thought that the matter of material was of consequence, when the use and general nature of the merchandise is considered, especially in view of the sweeping provision "* * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, * * *" contained in the paragraph. In another case this court has said: "Every paragraph of the Tariff Act * * * must yield to that language." *Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, 479; T. D. 41367. The matter of material did not affect the question in the case of *G. W. Sheldon & Co.* v. *United States*, T. D. 42988, a decision of the United States Customs Court (not appealed from) holding steel bead shoe buckles to be ornaments in chief value of beads, which decision was brought specifically to the attention of Congress in the Summary of Tariff Information 1929, Vol. 1, page 743.

There does not seem to me to be an ambiguity which requires resort to the *ejusdem generis* rules or to legislative history in order to ascertain legislative intent, and I had regarded what was said by us in *United States* v. *P. C. Kuyper & Co.*, 22 C. C. P. A. (Customs) 536, T. D. 47531, most persuasive if not, in fact, conclusive upon that subject. Even when looked to, however, I do not agree that these require a conclusion different from that reached by the trial court, whose judgment, in my opinion, should be affirmed.