(C. D. 1829)

Sam Forwand Co. *v.* United States

■

United States Customs Court, First Division

■

(Decided December 6, 1956)

*Barnes, Richardson & Colburn (Albert MacC. Barnes, Hadley S. King,* and *Eugene F. Blauvelt* of counsel); *Siegel, Mandell & Davidson,* associate counsel; for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Joseph E. Weil,* trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: It has been stipulated between the parties to this action that the involved merchandise in this case consists of undressed fox skins and that plaintiff's illustrative exhibits 1 through 11 are representative of the furs under consideration by the court. The pelts under review were classified by the collector under paragraph 1519 (c) of the Tariff Act of 1930, as modified by the trade agreement with Canada, T. D. 51647, as "Silver or black fox furs or skins, dressed or undressed, not specially provided for," at the rate of 37½ per centum ad valorem. Plaintiff contends that the skins now before the court are properly classifiable under the provisions of paragraph 1681 of the same act and should be admitted free of duty. Paragraph 1681 reads as follows:

PAR. 1681. Furs and fur skins, not specially provided for, undressed.

The issue in this case has been narrowed down to the single inquiry as to whether the furs now before us are silver fox skins, undressed, since it is conceded that the importation does consist of fox fur skins, undressed, and that the furs in question are not black foxes.

The following written stipulation, plaintiff's exhibit 12, is in evidence:

IT IS HEREBY STIPULATED AND AGREED by and between Counsel for the Plaintiff and the Assistant Attorney General for the United States that the merchandise described on the invoice, covered by the above enumerated protest, as "white marked" consists of undressed fox skins which are correctly represented by the 11 skins accompanying this stipulation.

IT IS FURTHER STIPULATED AND AGREED, subject to the order of the Court, that the aforesaid 11 skins may be received in evidence and marked Plaintiff's Illustrative Exhibits 1 to 11 inclusive.

IT IS FURTHER STIPULATED that the protest is limited to the merchandise described as "white marked" with or without other words of specification or limitation.

Several expert witnesses were called by each party to this litigation. Those testifying on behalf of the plaintiff all expressed the opinion that plaintiff's illustrative exhibits 1 through 11, conceded by the parties to be representative of the imported merchandise, definitely are not silver foxes, but all the experts who testified on behalf of the Government were just as positive in their expressed opinions that the furs in question are silver foxes. The reasons given by plaintiff's witnesses to support their opinions are summarized in the testimony of Olmar Brager-Larsen in the following language, referring to plaintiff's illustrative exhibits 1 through 11:

A. There are distinguishing markings on the nose, over the forehead, around the head, on the belly, and on the paws, such markings is a special thing that we do have with that kind of a fox. Furthermore, the under-fur as a whole, is much lighter than the under-fur in a silver fox. * * * (R. 22.)

On the other hand, the testimony of the Government's witnesses that the imported furs represent a phase of silver foxes is fairly well summarized in the following testimony by Max Bachrach:

Q. What are the characteristics of a silver fox?—A. The—well, you have different types of silver fox, those things which we call phases.

Q. Is there any—I don't want to interrupt you, but is there any peculiar characteristic to all silver foxes which isn't characteristic to any other fox or any other fur?

*    *    *    *    *    *    *

A. Yes, sir, there is a particular definite characteristic which is not found in any other fur.

Q. And what is that?—A. That is, a hair that is light gray in color at the lower basal third of the hair, then a white band in the middle and the tip, and part of that, third or quarter of the hair will be black. A few of the hairs—not too many, but a few of the hairs—will be white all the way through. I am referring now to the back of the skin. If you look at the bellies, the bellies generally have a one color, of a grayish tone throughout. Another characteristic is the tails. No other fox has a white tip on the tail but the silver fox.

Q. You say that no other fox has a white tip on the tail but a silver fox?—A. That is right.

Q. And is there any other animal that has a white tip on the tail, other than a silver?—A. There are other animals, like a skunk, some of them have, and the little spotted skunk from Mississippi Valley, also some have a white tip on the tail. But they are in a different category of animal.

Q. Have Exhibits 13 and 14 white tips on the tail?—A. Yes, sir.

Q. Have Exhibits C and D white tips on the tail?—A. Yes, sir.

Q. Have Exhibits 1 to 11 white tips on the tail?—A. They have.

Q. Based upon your experience and your education, what, in your opinion, are Exhibits 1 to 11?—A. They are silver foxes.

Q. Silver foxes?—A. Yes, sir.

Q. What, in your opinion, are Exhibits 13 and 14?—A. Silver foxes.

Q. And what, in your opinion, are Exhibits C and D?—A. Silver foxes.

Q. Are there any differences, based upon your examination, your microscopic examination and your visual examination and inspection, can you say whether,

in your opinion, there is any difference between the hairs of the white ring—I should say the ring neck—the white face or white mark foxes—I will withdraw that. Based upon your experience, can you say whether there is any difference between the hairs of Exhibits 1 to 11 and Exhibits C and D and 13 and 14?— A. There is no difference, and I base that upon the fact that I have examined these hairs microscopically from similar samples of skins in the past. (R. 195–197.)

There is a very obvious conflict between the opinions expressed by the witnesses for the plaintiff and the witnesses called on behalf of the Government. As hereinafter appears, however, these opinions are at most advisory to the court.

This court and the Court of Customs and Patent Appeals have already had occasion to pass upon the question of the burden which a party must discharge in cases of this sort and upon the meaning of the term "silver fox." *O. Brager-Larsen* v. *United States*, 18 Cust. Ct. 37, C. D. 1042, affirmed in *United States* v. *O. Brager-Larsen*, 36 C. C. P. A. (Customs) 1, C. A. D. 388. The merchandise there involved consisted of certain fox furs or skins which were classified, as were the skins here in question, under paragraph 1519 (c) of the Tariff Act of 1930, as modified, as silver or black fox furs or skins, and claimed properly free of duty under paragraph 1681 of the said act as "Furs and fur skins, not specially provided for, undressed." In the foregoing case, our appellate court held that—

In order to sustain his burden of proof, appellee was only obliged to present evidence to prove that the imported platinum fox skins were not silver or black fox furs or skins within the common meaning of that expression.

In the instant case it, therefore, appears that all that is required of the plaintiff to sustain its burden of proof is to present evidence to prove that the imported merchandise is not silver fox furs.

Our sole inquiry in this case is: Are the imported furs, or are they not, silver fox furs?

At the outset, we must be guided by the principle of law set forth by the appellate court in the *O. Brager-Larsen* case, *supra*, page 3, in the following words:

It is well settled that the common meaning of a tariff term is not a question of fact, but a question of law. *United States* v. *Shalom & Co.*, 33 C. C. P. A. (Customs) 29, 35, C. A. D. 311; *Stephen Rug Mills* v. *United States*, 32 C. C. P. A. (Customs) 110, 115, C. A. D. 293; *United States* v. *Florea & Co., Inc.*, 25 C. C. P. A. (Customs) 292, 296, T. D. 49396.

As a guide for the consideration of evidence in determining the meaning of tariff terms, our appellate court, in the *O. Brager-Larsen* case, *supra*, set down the following rule:

In determining the common meaning of words, courts may receive evidence as to such meaning and as to the name to be applied to a given article in common acceptance, but such evidence is merely advisory to the court. Courts may consult dictionaries and other authorities and also draw upon their own knowledge

of materials within the common understanding in making their determination of common meaning. *Absorbo Beer Pad Co., Inc.* v. *United States,* 30 C. C. P. A. (Customs) 24, 30, C. A. D. 209; *United States* v. *John B. Stetson Co.,* 21 C. C. P. A. (Customs) 3, 9, T. D. 46319; *United States* v. *Flory & Co.,* 15 Ct. Cust. Appls. 156, 159, T. D. 42219.

Proceeding then to answer the question "What is a Silver Fox?" the appellate court, in the *O. Brager-Larsen* case, *supra,* after quoting extensively from bulletins, books, encyclopedias, digests, dictionaries, and other recognized authorities, summarized its conclusions, at page 8, as follows:

It is clearly apparent that the common meaning of "silver fox," as contained in the dictionaries, has not changed from 1903 up to and including the date hereof, and all those definitions may be summarized by stating that the characterizing feature of silver fox fur is that it is all dark, at least in background, inter-mixed with silver found in many of the guard hairs. We do not believe that, if the common meaning of "silver fox" had changed since the effective date of the involved tariff act, such change would not appear in the dictionaries and standard works on furs.

It was intended by the Congress that fox pelts should be classified by their appearance or character alone, as appears from the Summary of Tariff Information, 1929, page 1991, reading as follows:

\* \* \* Fox pelts should be classified under paragraph 1420 [Act of 1922] solely with reference to the character of the pelt, and therefore without any attempt to ascertain whether it is produced as a result of the crossing of a black or silver fox with any other breed. (C. I. E. 3685, of 1928.)

The appellate court then set down the differentiating characteristics of silver fox pelts and of the fur skins there imported, stating in this connection as follows:

The trial court had the fur exhibits before it and they were before us at the argument on appeal. From a visual examination of the furs and a consideration of the uncontradicted pertinent testimony, the trial court listed in parallel columns the differentiating characteristics of the silver fox and the imported merchandise as follows:

| *Silver* | *Platinum* |
|---|---|
| *Under Fur;* Black to dark gray. | *Under Fur;* White to pale gray. |
| *Guard Hairs;* Black with white band and all black. | *Guard Hairs;* White with black tips to all white. |
| *Belly;* Dark gray to black. | *Belly;* White to pale gray. |
| *Paws;* Black. | *Paws;* White to bluish white. |
| *Ears;* Blackish. | *Ears;* Pale bluish or pale gray. |
| *Snout;* Black. | *Snout;* Light. |
| *Tail;* Small white tip. | *Tail;* Large white tip. |
| *Inside of Mouth;* Black. | *Inside of Mouth;* Pinkish. |
| *Average Size;* Smaller than platinum. | *Average Size;* Larger than silver. |
| *Over-all Effect;* Dark background with silver veil. | *Over-all Effect;* Light-colored background with darker veil. |

The appellate court, in the *O. Brager-Larsen* case, *supra,* further stated:

We agree that the differences, as set out by the trial court are correct.

We have carefully examined visually plaintiff's illustrative exhibits 1 through 11 in the case at bar, and have found the characteristics of these exhibits to be as follows:

*Under fur*;   White to pale gray.

*Guard hairs*;   White with black tips; some white.

*Belly*;   Definite white markings near the leg and around the neck; balance from gray to a bluish gray.

*Paws*;   White marks on all paws, except plaintiff's illustrative exhibits 4 and 11, which have white marks on only one each.

*Ears*;   Black.

*Snout*;   White-marked on all exhibits.

*Tail*;   Definitely white-marked tips on all exhibits.

*Inside of mouth*;   No distinctive colorations observable.

*Average size*;   Slightly smaller than the silver foxes (plaintiff's illustrative exhibits 13 and 14; defendant's illustrative exhibits "C" and "D").

*Overall effect*;   Light-colored background with light-dark veil.

We are satisfied upon the record presented and upon examination of the fur skins, concededly representative of the imported merchandise (plaintiff's illustrative exhibits 1 through 11), that the fur skins at bar are not "silver foxes" within the common acceptation of that term.   They are not "all dark, at least in background, intermixed with silver found in many of the guard hairs," and the presence of the white markings on the belly, paws, and snout of each representative skin, as well as the whitish characteristics of the under fur and guard hairs does not lend the silvery appearance to the skins in question, such as is found in "silver" foxes.

Taking as we must for our criterion in determining the characteristics of silver fox furs, the standards fixed by the court in the *O. Brager-Larsen* case, *supra*, we are of opinion and hold that the fur skins before us are not silver fox furs, as classified by the collector, but that they are properly classifiable under paragraph 1681 of the Tariff Act of 1930 as "Furs and fur skins, not specially provided for, undressed," and, as such, should be admitted duty free.   The protest claim herein is sustained.

Judgment will be entered accordingly.