UNITED STATES *v.* FLORY & Co. (No. 2845)[1]

United States Court of Customs Appeals, May 19, 1927

*Charles D. Lawrence* Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Geo. J. Puckhafer* and *Henry J. Rode* of counsel) for appellee.

[1] T. D. 42219.

[Oral argument April 21, 1927, by Mr. Carter and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The issues in this case again involve the construction of paragraph 1428 of the Tariff Act of 1922, and especially the meaning to be given to the words "jewelry, commonly or commercially so known * * *, of whatever material composed, * * *" when applied to necklaces composed of materials other than those prescribed, in the definition of jewelry, in *American Bead Co.* v. *United States*, 7 Ct. Cust. Appls. 18.

The testimony and the briefs before the Board of United States General Appraisers (the United States Customs Court when the case was decided), and in this court (until the reply briefs were filed), seem to indicate that the importation in dispute consisted of beads of various colors, but it is now made plain that the only question before this court and the only question that was properly before the trial court was should that portion of collective Exhibit 1, which consisted of black galalith beads, be classified for duty under paragraph 1428 as jewelry, or under paragraph 1403 as "articles * * * composed wholly or in chief value of beads"?

The opinion of the court below indicates that its decision, sustaining the protest of the importer, was based partially upon the ground that the necklaces contain no clasps. It is conceded by both sides that this is erroneous and that each necklace does have a clasp, which consists of two beads fastened together by a black screw composed, presumably, of the same material as the beads.

Before the board, to sustain its protest, importer introduced five witnesses, attempting to prove that the importation was not commercially or commonly known as jewelry. The Government evidently felt called upon to rebut this testimony and introduced eight witnesses in an effort to sustain the collector's finding.

Before the board, and here, it seems to be admitted that the commercial testimony failed and should be disregarded, and it is disregarded.

It is admitted that the beads in the necklaces are composed of galalith. Galalith is a product of casein. Casein is in turn obtained from milk. Summary of Tariff Information, 1921, p. 88. In appearance the beads resemble jet, are black, glossy, faceted, and graduated.

From arguments before this court by counsel for importer and from importer's briefs it is manifest that this appeal is little more than a motion for a new trial in the cases of *United States* v. *Doragon*, 13 Ct. Cust. Appls. 182, *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 190, and other cases decided by this court, which gave the new language used in the Tariff Act of 1922 the effect

of changing the definition of jewelry heretofore adhered to by this court when construing prior acts.

No good purpose could be served by reviewing, in detail, the voluminous history of jewelry legislation and the resulting judicial interpretations thereof by this and other courts. But, in order to give a fuller understanding of the views of this court as to the meaning and proper application of the very confusing language used, we think it necessary to briefly state the present legislative and judicial situation in respect to the classification of the character of goods involved herein.

Owing to the dictionary definitions and other considerations, this court in *American Bead Co.* case, *supra*, in construing the jewelry paragraph of the Tariff Act of 1913, held as follows:

(4) Without attempting a fixed definition of jewelry or to declare a hard and fast line of distinction between these competing paragraphs, the recitals therein by Congress, taken in connection with well-known general incidents of jewelry real and imitation, are notably significant. Jewelry, as therein indicated and in the common conception, is composed of the *precious metals or imitations thereof;* or of *precious or semiprecious stones, pearls, or imitations thereof,* or *cameos, coral, or amber,* including artificial, synthetic, or reconstructed pearls, rubies, or other precious stones, strung or set. (Italics ours.)

Common conception of what constitutes a named article of necessity resides in its physical attributes as presented to the vision. While the caprice of fashion or the advantages of trade may in trade vary this understanding, it is only commercially and not commonly so, for the common acceptation remains the same notwithstanding the periodical appearance of what may commonly be regarded as unusual personal adornments, denominated possibly by interested trade as jewelry. Undoubtedly, therefore, the common acceptation of jewelry readily refers the mind to articles made from the precious *metals and stones and imitations thereof.* (Italics ours.)

On the other hand, beaded articles may be made of any material and may or may not be worn upon or about or attached to the person. To illustrate: Necklaces made of the precious metals or imitations thereof have been held by this court as jewelry, commonly so known. Cased cited, supra.

Likewise necklaces in imitation of the precious stones. Cases cited, supra.

·Now, jet is not a precious or semiprecious stone, but a variety of mineral coal. Accordingly, we have held imitation jet articles not jewelry commonly so known. United States *v.* Beierle (1 Ct. Cust. Appls. 457; T. D. 31506). So, also, held the Supreme Court of metal (nonprecious) beads, strung. Frankenberg Co. *v.* United States (206 U. S. 224).

In the Tariff Act of 1922 Congress made certain changes in the language of the jewelry paragraph, among them being the important one of adding the words "of whatever material composed."

In the *Doragon* case, *supra, International Forwarding Co.* case, *supra, United States* v. *Hirsch,* 13 Ct. Cust. Appls. 181, and in cases subsequently decided by this court we held that, by the addition of the words "of whatever material composed," Congress meant to meet and obviate the construction of this court in the *American Bead Co.* case, *supra,* and other cases, and to provide that, if articles

were such as were known to be jewelry, either commonly or commercially, they should be so classified regardless of the material of which they were composed.

In the *Doragon* case, *supra*, we said:

The article must be such as is commonly or commercially known as jewelry. This is a matter to be decided in accordance with the facts in each particular case.

In the *International Forwarding Co.* case, *supra*, we held in substance that, since the collector had assessed the articles as jewelry and thereby found that they were commonly or commercially known, or both commonly and commercially known as jewelry and since there was nothing to show the contrary, the fact that the necklaces were composed of mother-of-pearl beads did not dispute the finding of the collector.

It is evident that the importer, in the case at bar, believed: First, that it could prove that commercially the galalith necklaces were not known as jewelry (in this it failed); second, that if it proved that they were not commonly known as jewelry the court would be bound by the weight of the testimony of the witnesses produced.

It must be borne in mind that the courts have uniformly held that while evidence may be received by the court as to the common meaning of a term and as to the name to be applied to a given article, in the common acceptance, if the subject matter covered by the testimony is a matter of judicial knowledge, the court is not obligated to accept it, but may consult the dictionaries, lexicons, and other authorities, and also draw upon its own knowledge of matters within the common understanding.

Now, it is obvious that there are some articles which might by some be styled jewelry, of which the court would have little or no knowledge and concerning which there were no acceptable authoritative expressions. In this kind of an instance courts would naturally accept the weight of evidence, if such evidence was regarded as satisfactory in meeting the issue and in overcoming the presumption of correctness attaching to an officer's performance of a statutory duty. But let us bear in mind that the instant case involves again the definition of jewelry within the tariff sense, as provided for in paragraph 1428, when applied to a finished necklace, ornamental in character, and worn as ornamental necklaces are worn. It is within the common understanding that necklaces, earrings, brooches, finger rings, and certain pins worn upon the person for adornment are jewelry, and as far as we know always have been and always will be so regarded. This court and other courts have on repeated occasions held them to be jewelry.

Under tariff acts prior to the present one a finished necklace was always held to be jewelry if composed of the materials prescribed in

the *American Bead Co.* case, *supra.* One of the many pertinent citations may be given as *United States* v. *Woolworth Co.,* 10 Ct. Cust. Appls. 194. In this case the merchandise consisted of imitation pearl bead necklaces, finished with a metal clasp. The articles were of the cheap, 10-cent variety. Notwithstanding the fact that there was some testimony to the effect that the article was not jewelry, the court said:

> The matter of common acceptation is always one wherein the court will be guided by the samples and its judicial knowledge, and will not be controlled against its judgment. The only element of the case militating against these articles being deemed jewelry is their cheapness.

Numerous authorities were therein cited as holding bead necklaces to be jewelry, among them being *United States* v. *Kraemer & Co. et al.,* 5 Ct. Cust. Appls. 294, where certain cheap necklaces of glass beads were involved.

The board held that there was no presumption of correctness in the collector's finding, for the reason that witnesses testified in great numbers, and cited *Morse* v. *United States,* 13 Ct. Cust. Appls. 553. It certainly is a correct statement of the law that, before the Board of General Appraisers or in any other judicial trial forum, the presumption attaching to the correctness of an officer's act falls only when some substantial evidence has been introduced to contradict it. The opposing party then must meet the issue and rebut the proof offered.

The board has improperly applied this principle in the case at bar, or rather it might be said that it has, under the circumstances, erroneously given controlling influence to this principle. Some of the witnesses have said, chiefly on account of material or cheapness, that these necklaces are not jewelry. The court knows, and has held that they are jewelry. If the articles under consideration were of such character that the courts could not take judicial knowledge of them, then the principle laid down in the *Morse* case would be applicable, and justly and properly so.

Suppose the question before the court was, is a horse an animal, and the proof would show that a horse was not an animal. It is doubtful if the testimony in this kind of supposed case would be regarded by any court as any evidence at all. But, certainly the principle laid down in the *Morse* case (which is in no sense a new one), would not control as against the judicially known fact and judicially decided fact, that a horse is an animal.

In accordance with the holdings of this court, in construing paragraph 1428 of the Tariff Act of 1922, in which we gave effect to the words "of whatever material composed," we think the trial court, regardless of such proof of the common meaning as was produced, should have found that the black galalith beads were neck-

laces and as such were jewelry; that their appearance, use, and characteristics, regardless of the fact that they were galalith, compelled their classification as jewelry, within the meaning of paragraph 1428, since within the common understanding such articles were judicially known to be and had been judicially held to be jewelry. *Doragon* case, *supra; International Forwarding Co.* case, *supra; Hirsch* case, *supra; United States* v. *Wannamaker*, 14 Ct. Cust. Appls. 285, T. D. 41888; *United States* v. *May Department Stores Co.*, 15 Ct. Cust. Appls. 46, T. D. 42151; *United States* v. *Emrich & Schorsch*, 13 Ct. Cust. Appls. 199.

The judgment of the United States Customs Court is *reversed.*

### CONCURRING OPINION

BARBER, Judge: Because of the controlling effect of certain of the decisions of this court cited in the main opinion, I concur in the result only.

In this concurring opinion Smith, J., concurs.