The UNITED STATES, Appellant,

v.

PARKSMITH CORPORATION,
Appellee.

Customs Appeal No. 74–17.

United States Court of Customs
and Patent Appeals.

April 10, 1975.

Carla A. Hills, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Edward S. Rudofsky, New York City, for the United States.

Joel K. Simon, Serko & Simon, New York City, attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

MILLER, Judge.

This is an appeal from the judgment of the Customs Court, 71 Cust.Ct. 12, C.D. 4463, 365 F.Supp. 461 (1973), sustaining appellee's claims that its imported merchandise is properly classifiable as articles in chief value of lead, valued over 13⅓ cents per pound, under item 657.75, Tariff Schedules of the United States. We affirm.

The imported merchandise, with one exception, was classified by the Customs Service as articles not specially provided for of a type used for household use under item 654.20. In one instance, merchandise was classified under item 653.80 as household articles coated or plated with silver. Schedule 6, Part 3, covers Metal Products and provides, in pertinent portions:

Subpart F.—Miscellaneous Metal Products
\* \* \* \* \* \*
    Articles not specially provided for of a type used for household, table, or kitchen use; toilet and sanitary wares; all the foregoing and parts thereof, of metal:
    \* \* \* \* \* \*
      Articles, wares, and parts, of base metal, coated or plated with precious metal:
      \* \* \* \* \* \*
653.80   Coated or plated with silver .. 17% ad. val.
      \* \* \* \* \* \*
      Articles, wares, and parts, of base metal, not coated or plated with precious metal:
      \* \* \* \* \* \*
654.20   Other .................. 15% & 17% ad val.
    Subpart G.  Metal Products Not Specially Provided For
    \* \* \* \* \* \*
    Articles of lead, not coated or plated with precious metal:
    \* \* \* \* \* \*
657.75   Valued over 13⅓ cents per pound ............. 10% & 11.25% ad val.

The merchandise consists of small replicas of the Empire State Building and the Statute of Liberty and minature field cannons of varying sizes on the order of several inches—all made of antimony. Each of the articles classified un-

der item 653.80 is a particular miniature of the Statue of Liberty.[1]

The Customs Court found that the importations are souvenirs which lack any utilitarian nature and are primarily decorative. Interpreting item 654.20 to embrace only utilitarian articles, the court held the merchandise to be properly classified under item 657.75.

### OPINION

Appellant concedes that the importations are classifiable as claimed by appellee if they are not classifiable under item 654.20, but raises two arguments in support of the item 654.20 classification: first, that item 654.20 embraces *all* household articles, even if merely decorative; and second, that, even if merely decorative articles are excluded from item 654.20, the imported field cannons have utility as paperweights.

The language of the main heading for item 654.20, especially the phrase "used for household . . . use," strongly suggests that utility in more than a passive, decorative sense is required. Thus, "use" is defined in *Webster's New International Dictionary* 2806 (2d ed. unabr. 1956), as a verb:

To convert to one's service; to avail oneself of; to employ . . ..

. . . . .

To put into operation; to cause to function . . ..

. . . . .

*Syn.*—USE, EMPLOY are often freely interchangeable. USE is commonly more direct than EMPLOY, which frequently means to make a particular use of . . ..

And as a noun:

Act of employing anything, or state of being employed; application . .. ..

. . . . .

Quality of being suitable for employment; capability of being used or of serving to promote an end; usefulness; utility; . . . the end served; the purpose or object . ..  Function; particular service . . ..

. . . . .

*Syn.*—USE, USEFULNESS, UTILITY.

The Tariff Classification Study of 1960 discloses a legislative intent which confirms the requirement of active utility. See Mego Corp. v. United States, C.A.D. 1137, 505 F.2d 1288, 62 CCPA —— (1974). Its Explanatory Note on item 654.20 reads in relevant part as follows:

Items 653.60 through 654.20 cover, without significant rate changes, "articles not specifically provided for of a type used for household, table, or kitchen use, toilet or sanitary wares; all the foregoing and parts thereof, of metal". The proposed provisions are derived *primarily from paragraph 339.* [Emphasis added.]

Tariff Classification Study, supra, Schedule 6 at 203. The only existing provision listed in the proposed revised schedule with item 654.20 was paragraph 339; whereas items derived from more than one predecessor provision were listed with a plurality of existing provisions. *Id.* at 172, 214. This court has long recognized that paragraph 339 of the Tariff Act of 1930, ch. 497, Pub.L. No. 361, 46 Stat. 616, applied only to articles chiefly used to achieve utilitarian objectives. J. C. DeJong & Co. v. United States, 52 CCPA 26, C.A.D. 852 (1965); United States v. S. P. Skinner Co., 46 CCPA 105, C.A.D. 708 (1959); L. Tobert Co. v. United States, 41 CCPA 161, C.A.D. 544 (1953); Pramette Juvenile Furniture Co. v. United States, 36 CCPA 61, C.A.D. 398 (1949). Such an interpretation of paragraph 339 would, in the absence of a contrary indication, carry over to item 654.20.

---

1. Appellant challenged below, and again questions on appeal, the jurisdiction of the Customs Court to hear and determine the protest directed against classification of this importation. This point is discussed later in the opinion.

Appellant argues that the differences between paragraph 339[2] and item 653.20 compel the conclusion that a change in meaning was intended unless the contrary was made plainly to appear. However, we are persuaded that the contrary *was* made plainly to appear. In drafting the heading for item 654.20, "household . . . utensils" in paragraph 339 was changed to "articles . . . used for household . . . use." Thus, "articles" plus "used" and "use" were substituted for "utensils." The plain meaning of this combination, coupled with an absence in the legislative history of any intent to make a change in substance, demonstrates that no change in substance was intended.

Appellant further argues that when Congress, in 1965, added headnote 2 to Schedule 6, Part 3,[3] it referred to "household utensils and articles," requiring a conclusion that household articles are not household utensils. However, this argument ignores the fact that item 654.20 does not include "household articles" in general, but "articles . . . of a type *used* for household . . . use." See Carey & Skinner, Inc. v. United States, 42 CCPA 86, 89, C.A.D. 576 (1954).

Moreover, if headnote 2 to Schedule 6, Part 3, sheds any light on legislative intent, it supports appellee. Prior to the 1965 change, it appeared as headnote 4 of Subpart E of Schedule 6, Part 3, and provided as follows:

The provisions in this subpart which specifically refer to kitchen or table ware, or to table, kitchen, or household utensils, include articles of types which are used outdoors as well as those which are used indoors.

The Explanatory Note to headnote 4 set forth its purpose:

Headnote 4 relates to certain provisions in this subpart which specifically refer to "kitchen or table ware" or to "table, kitchen, or household utensils" and insures that such provisions would include articles of types used outdoors as well as those which are used indoors. Certain articles, for example, long-handled barbecue forks, are excluded from provisions in paragraph 355 for household or kitchen articles by reason of their principal use being outdoors in patios, backyards, and picnic groves.

Tariff Classification Study, supra, Schedule 6 at 191. There was no corresponding headnote for Subpart F. This deficiency was corrected when Congress passed the Tariff Schedules Technical Amendments Act of 1965, Pub.L. No. 89–241, 79 Stat. 939, section 34 of which deleted headnote 4 of Subpart E and added headnote 2 to Schedule 6, Part 3, where it applies to both Subpart E and Subpart F. The only relevant change in language was addition of the words "and articles" after "utensils." The House and Senate reports make no mention of this change and indicate that the sole reason for the amendment was to insure uniform treatment under Subpart E and Subpart F for articles and utensils used indoors or outdoors.[4] It would appear

---

2. Para. 339. Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for: Plated with platinum or gold, 65 per centum ad valorem; plated with silver, 50 per centum ad valorem; composed of iron or steel and enameled or glazed with vitreous glasses, 5 cents per pound and 30 per centum ad valorem; composed wholly or in chief value of aluminum, 8½ cents per pound and 40 per centum ad valorem; composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, 40 per centum ad valorem; the foregoing rates shall apply to the foregoing articles whether or not containing electrical heating elements as constituent parts thereof.

3. The headnote reads:

The provisions in this part which specifically refer to kitchen or table ware, or to table, kitchen, or household utensils *and articles,* include articles of types which are used outdoors as well as those which are used indoors. (Emphasis added.)

4. H.R.Rep.No.342, 89th Cong., 1st Sess. 3 (1965), declares that the amendments in the bill are limited to clear errors or to provisions where clarification is necessary. It states, at 21–22:

that Congress added the words "and articles" merely as a technical amendment to correlate the headnote with the word "articles" in Subpart F to which the headnote was newly applied.

In view of the foregoing, we hold that item 654.20 does not apply to articles which are merely decorative.

■ Appellant's second argument, that the imported miniature field cannons have utility as paperweights, is governed by chief use under General Interpretative Rule 10(e)(i)—a question of fact. *L. Tobert Co.,* supra. We are persuaded that there is substantial evidence of record to support the finding of the Customs Court that the imported articles are primarily decorative. The evidence includes not only the testimony of four witnesses each of whom have sold souvenirs of the class or kind to which the imported articles belong for periods of ten to twenty-seven years, but also an exhibit of a miniature field cannon representative of the imported cannons. The exhibit demonstrates that the article is much too flimsy and unstable to be suitable for use as a paperweight. See *Ignaz Strauss & Co. v. United States,* 54 CCPA 125, 127 C.A.D. 923 (1967).

Appellant has also argued that the particular replica of the Statue of Liberty classified under item 653.80 was not embraced by the protest, because the protest was directed only against the classification of articles under item 654.-20; consequently, that the Customs Court lacked jurisdiction over the issue of classification of this article.[5] The relevant portion of the protest reads as follows:

Protest is hereby made against your decision assessing duty at 15% underitem [sic] 654.20 or other rate or rates, on antimony articles, and all other items assessed at the same rates of duty . . . . The reasons for objections . . are that such merchandise is dutiable at 10% under item 657.75.

. . . . . . .

This protest is intended to cover all merchandise of the same class, kind or character and at the same assessed rate, paragraph or item as that herein specified and covered by the entries referred to above whether or not particularly set forth herein.

Listed on the invoice and classified under item 654.20 is:

Novelty Ornament.
Set of 2 pcs.
  1 pce.—2.¾" Empire State Building
  1 pce.—2.½" Statue of Liberty.
Gold & Silver Vacuum finish only.

The articles classified under item 653.80 are shown on the invoice as:

Antimony ornament.
6" Statue of Liverty [sic].
Silver finish.

A third type of antimony article listed on the invoice is a pencil sharpener, classified under item 651.33.

---

TABLEWARE AND OTHER HOUSEHOLD UTENSILS

*Existing* headnote 4 to subpart E of part 3 of schedule 6 provides that the provisions of subpart E which specifically refer to kitchen or table ware, or to table, kitchen, or household *articles*, include "articles of types which are used outdoors as well as those which are used indoors." The headnotes for subpart F of such part 3 do not contain a corresponding provision.

Section 28 of the bill amends the headnotes for part 3 of schedule 6 to provide that the provisions in such part 3 which specifically refer to kitchen or table ware, or to table, kitchen, or household utensils and articles, include articles of types which are used outdoors as well as those which are used indoors. Under the amendment, uniform treatment is provided under subpart E and subpart F for barbecue utensils and other articles and utensils designed for use on patios or in yards or at campsites. [Emphasis added.]

Similarly, S.Rep.No.530, 89th Cong., 1st Sess. 28 (1965), 1965 U.S.Code Cong. & Admin. News, pp. 3416, 3442, states:

*Tableware and other household utensils.*
—The changes made by this section assure uniformity between various provisions with respect to the tariff treatment of kitchen or table ware (or table, kitchen, or household utensils) of base metals whether they are of a type used indoors or outdoors. At present, it is not clear that all of these provisions include camping, barbecue, or patio utensils.

5. Appellant admits that classification under item 653.80 was erroneous and should have been under item 654.20.

A protest must be sufficiently distinct and specific to enable the Customs Service to know what is in the mind of the protestant. United States v. Weigert-Dagen, 39 CCPA 58, C.A.D. 464 (1951), cert. denied, 342 U.S. 947, 72 S.Ct. 554, 96 L.Ed. 704 (1952). See Bing & Co.'s Successors v. United States, 3 Ct. Cust.App. 211, T.D. 32532 (1912). In its most recent consideration of such an issue, this court reversed the trial court and held that the protest was sufficient, stating:

> [D]enial of jurisdiction for insufficiency of protest is a severe action which should be taken only sparingly. Giving a liberal construction to the protests, we conclude that the collector could reasonably assume that any of the possibilities would have been preferable in the mind of the importer to the provision for parts of boats under which the engines and outdrives were classified. The several possibilities engendered by these alternatives are not so numerous as to impose any undue burden on the collector. Hence, while the use of the phrase "Machine Parts" was, in the words of the Customs Court, "improvident," we do not feel that it leads to a fatal flaw in the . . . protests such that jurisdiction must be denied.

Eaton Mfg. Co. v. United States, C.A.D. 1076, 469 F.2d 1098, 60 CCPA 23 (1972).

Under the facts of this case, we conclude that the trial court's determination, sub silentio, that it had jurisdiction over the issue of classification under item 653.80 should be upheld. We note, particularly, that the protest states it is intended to cover all merchandise of the same class, kind, or character assessed at the same 15% rate; also that articles classified under item 653.80 are almost identical (except for size) to articles classified under item 654.20. This would inform the Customs Service that more than antimony articles classified under item 654.20 could be involved. No undue administrative burden was imposed by the failure to specify which of the two other antimony articles was the subject of protest.

[9] One final question remains. Appellant has moved to impose on appellee the costs of printing eighteen pages of the Transcript of Record, designated by appellee, which contain testimony laying a foundation for the introduction into evidence of appellee's exhibits in the Customs Court. This testimony is useful in identifying the exhibits, explaining differences between the exhibits and the imported merchandise, establishing the qualifications of the witnesses, and showing where the imported merchandise is sold. Accordingly, the motion is denied.

The judgment of the Customs Court is affirmed.