**RUSS BERRIE & CO., INC.**

v.

**UNITED STATES.**

**C.D. 4659, Court No. 72–4–00796.**

United States Customs Court.

June 24, 1976.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz and James Caffentzis, New York City, of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (David A. Ast and Joseph R. Borich, New York City, trial attys.), for defendant.

MALETZ, Judge:

This case involves the proper classification of articles invoiced as "papier-mache figurines" that were imported from Japan via the port of New York in 1970. The articles were classified by the government as dolls under the provisions of item 737.20 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9, and assessed duty at the rate of 24 percent ad valorem. Plaintiff claims the merchandise is classifiable under item 256.75, TSUS, as modified by T.D. 68–9, as articles of papier-mache, not specially provided for, dutiable at the rate of 5½% percent ad valorem.[1]

The government alternatively claims that if the court should find the importations are not dolls, they would then be classifiable under item 737.40, TSUS, as modified by T.D. 68–9, as other toy figures of animate objects (except dolls) not having a spring mechanism and not stuffed, dutiable at the rate of 24 percent ad valorem.

The pertinent provisions of the tariff schedules are as follows:

> Schedule 7, Part 5, Subpart E.—
> Models; Dolls, Toys, Tricks, Party Favors
>
> Subpart E headnotes:
>
> 1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules,
>
> . . .
>
> *  *  *  *  *  *
>
> 2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.

Classified under:

737.20 Dolls, and parts of dolls including doll clothing ...... 24% ad val.

Defendant's alternative claim:
Toy figures of animate objects (except dolls):

Not having a spring mechanism:

*  *  *  *  *  *

Not stuffed:

*  *  *  *  *  *

737.40 Other ................... 24% ad val.

1. The parties agree that the articles in are chief value of papier-mache.

Plaintiff's claim:

*Schedule 2, Part 4, Subpart D.*—Articles Not Specially Provided for of Pulp, of Papier-Mâché, of Paper, or of Paperboard

Subpart D headnote:

1. This subpart covers articles of pulp, of papier-mâché, of paper, or of paperboard, not provided for elsewhere in this schedule or in schedule 7.

Articles, of pulp, of papier-mâché, of paper, of paperboard, or of any combination thereof, not specially provided for:

| * | * | * | * | * | * |

256.75  Of papier-mâché .......... 5.5% ad val.

The importations, as described in plaintiff's catalogue, consist of five papier-mache miniature figures of "[l]ovely little lassies, brilliantly hand colored and coyly posed." See plaintiff's exhibit 4, back page. Three samples of the imported articles are in evidence as illustrative exhibits (plaintiff's exhibits 1–3); while these samples are of plastic rather than papier-mache, in every other respect they are the same as the actual importations. There are no samples of the two remaining imported figures but they are accurately depicted in plaintiff's catalogue.

Each of the imported figures is 4½ inches tall and is proportioned and posed in a cute and amusing fashion with brightly colored bushy hair made of soft fur. More particularly, the figure represented by Style 302 (plaintiff's exhibit 1) has soft purple hair, almond shaped eyes and protruding ears; it is posed in a pigeon-toed posture, has an extended belly and is holding a large lollipop upon which is inscribed "happy birthday." Style 303 (plaintiff's exhibit 3) has bright orange hair, is also pigeon-toed and is stooped over in a cute pose while coyly winking; the inscription taped onto this figure reads "guess who I like?" Style 304 (plaintiff's exhibit 2) has large protruding ears and a wide grin; the figure is carrying a flower and a taped inscription reading "I LOVE YOU." The two other samples depicted on the last page of plaintiff's catalogue are both coyly posed pigeon-toed figures having yellow or purple hair. Style 305 has a kerchief which is held like a sack

and contains an inscription reading "Get Well Soon." Model 306 has clasped hands and is inscribed "I WUV YOU."

Against this background, plaintiff contends that the imported figurines do not come within the common meaning of the term doll because (1) they are not used as playthings by children; (2) they are not recognized and sold in the trade as dolls; and (3) they are marketed and sold as novelty items and are used as an effective substitute for greeting cards.

Defendant contends that the importations are classifiable as dolls under item 737.20 because (1) item 737.20 is an *eo nomine* provision which includes all forms of the article; (2) the legislative history demonstrates that Congress intended to include the items before the court under the doll provisions; (3) this conclusion is underscored by an examination of the samples; and (4) the record shows the importations are known as dolls in the trade.

Inasmuch as the imported articles were classified by the government as dolls, plaintiff's first burden was to overcome the presumption of correctness attendant upon this classification and establish that the importations were not dolls. In an effort to meet this burden, plaintiff presented the testimony of two witnesses, both of whom were employed by it, one as sales manager and the other as national account executive. They indicated that the importations are impulse novelty gifts which are displayed attractively and in sufficient quantity at retail stores to induce customers to buy the item on impulse, even though they had no intention of purchasing such an item when they entered the store.

Each of the items is imported in a cardboard box which is suitable for mailing. On the box is a space for the name and address of the addressee; a space under the caption "greetings from" for the name and the address of the addressor; and a space for postage. Printed on another side of the box is: the style number of the enclosed figurine; an inscription that is the same as that contained on the figurine, e. g., "guess who I like?"; and the name and address of

the plaintiff-importer, Berrie. The purpose of the box is to enable the purchaser to mail the item as a greeting or message in place of a greeting card. The imported figurines themselves were distinguished by plaintiff's witnesses from greeting cards on the basis that they (i) are not made of cardboard or paper; (ii) have a more lasting and enduring quality than ordinary greeting cards which are disposed of after a short period of time; and (iii) are more expensive than the ordinary greeting card.[2] The importations were merchandised through retail card and gift shops and were sold to drugstores, variety stores, department stores, tie shops and men's haberdashers.

The items are most frequently utilized on knickknack shelves, credenzas, book shelves, and displayed on desks, counters and shelves in offices and restaurants. According to plaintiff's witnesses, the articles are purchased as gifts or greeting messages and the recipient of these figures displays them in a place where they can be seen and read. Beyond that, a witness for plaintiff testified that if the taped message were removed from the figure, it would be generally considered a doll. This witness further indicated that a doll is manufactured for the express purpose of being presented to a child between the ages of 8 months and 5 years and should represent a real person or real object with which the child is familiar. The witness was familiar with the figure of a Hawaiian hula girl that is placed on the front dash or rear seat deck of an automobile as a decorative item and did not consider that article to be a doll.[3] He did concede, however, that a retailer could sell the present importations as dolls.

The other witness for plaintiff considered that dolls were articles used by children as playthings but recognized that articles used for ornament or display could also be dolls and gave as an example the expensive dolls from various countries that are collected for display on shelves.

One of defendant's two witnesses—an officer in a company manufacturing products competitive with those of plaintiff—testified that he has seen dolls composed of papier-mache; that he has seen dolls with humorous sayings or greetings on them; and that, in his opinion, the importations in question are dolls and were so referred to in the trade. This witness defined a doll as "a representation or a reproduction of a model person or human form . . . in smaller scale." Products called "whatchamacallits" which are figures in caricature, made of a stonelike material posed in comic dress and manner on pedestals containing humorous sayings are dolls according to this witness; however, his company's advertisement in the *New York Gift Show* book (1975), p. 437 (plaintiff's exhibit 9) referred to these items as "whatchamacallit *statues.*" [Emphasis added.] This witness then testified that a statue of George Washington, without the pedestal, horse and other distractions, could be considered a doll in the very broad sense that it fits his definition of a representation of a human being in three dimensional form.

Defendant's second witness, who was at one time a senior toy buyer for Sears Roebuck, defined dolls as miniatures or likenesses of human beings, including babies and animals; in his view, dolls do not have to be a plaything used by children. (For example, collector dolls are "dolls" though they have no play value.) He added that it is usual, however, for dolls to contain an

---

2. Legal distinctions between this type of article and greeting cards appear in *S. Y. Rhee Importers v. United States,* 61 CCPA 2, C.A.D. 1108, 486 F.2d 1385 (1973) where various inflatable items with humorous sayings or greetings were held to be toys under item 737.90. In rejecting a claim for classification of this merchandise as greeting cards, the court found that the chief use of the item was amusement and further " . . . that such use was the very reason why the articles were purchased instead of ordinary greeting cards and that the 'greeting' use was merely incidental to the chief use of amusement . . . " 61 CCPA at 5, 486 F.2d at 1387.

3. In *American Customs Brokerage Co., Palmar Import Co., Inc. v. United States,* 278 F.Supp. 316, 60 Cust.Ct. 23, C.D. 3246 (1968), the court found such figures of Hawaiian hula girls classifiable as dolls under paragraph 1513 of the Tariff Act of 1930.

amusement factor. According to the witness, the present importations have amusement value to a child; they could be playthings and also could be room decorations.

In the setting of this record, the first matter for determination is whether the importations are within the common meaning of the term doll. As to this, plaintiff insists that in order to determine whether the imported articles are dolls or figurines the court must weigh the evidence concerning the manner in which the articles are actually used.[4] Defendant contends, to the contrary, that the provision for dolls, item 737.20, is an *eo nomine* provision, and since an *eo nomine* provision covers all forms of the article (*New York Merchandise Co., Inc. v. United States*, 62 Cust.Ct. 283, C.D. 3746, 305 F.Supp. 25 (1969), aff'd 58 CCPA 53, C.A.D. 1004, 435 F.2d 1315 (1970); *Weyerhaeuser Company v. United States*, 71 Cust.Ct. 81, 83, C.D. 4479 (1973); *Nootka Packing Co., et al. v. United States*, 22 CCPA 464, T.D. 47464 (1935)), the articles before the court, if they be dolls, are properly classifiable thereunder.

■ It is well established in customs jurisprudence that the tariff provision for dolls is not a use provision but an *eo nomine* provision. *United States v. Cody Manufacturing Co., Inc., et al.*, 44 CCPA 67, 73–4, C.A.D. 639 (1957); *Louis Wolf & Co., Inc. v. United States*, 15 Cust.Ct. 156, 161, C.D. 963 (1945); *The American Import Company v. United States*, 22 Cust.Ct. 51, 53, C.D. 1158 (1949); *Barum Co., Inc. v. United States*, 30 Cust.Ct. 414, 417, Abs. 57251 (1953).

■ Equally well established is the concept that a doll for tariff purposes is not confined to playthings for children but includes a wide range of other articles including but not limited to dolls for ornamentation such as boudoir dolls, souvenir or prize dolls, dolls for display or advertising purposes, and dolls sold as gag items, bar gadgets, adult novelties, etc. *Louis Wolf & Co., Inc. v. United States, supra*, 15 Cust.Ct. at 157, 158; *Gold-Silver & Co. v. United States*, 35 Cust.Ct. 246, 247, Abs. 59301 (1955). Thus the following wide range of articles have been held to be dolls for customs purposes: "World Fair Dolls" made of celluloid and manufactured to "simulate a military uniform with the World's Fair insignia of the 'Perisphere' and 'Trylon' on the hat," *Louis Wolf & Co., Inc. v. United States*, 15 Cust.Ct. 156, C.D. 963 (1945); Small woven rush figures made in Mexico, consisting of a horse and rider and a figure of a woman made of straw, *The American Import Company v. United States*, 22 Cust.Ct. 51, C.D. 1158 (1949); A hollow celluloid figure characterized as a gag item for adults which squirts water in a manner simulating the "Manneken Pis" statue in Brussels, Belgium, *Gold-Silver & Co. v. United States, supra*, 35 Cust.Ct. 246; A miniature plastic figure with a metal shaft affixed thereto which dedicated the article to exclusive use as a dancing doll with a music box, *United States v. Cody Manufacturing Co., Inc., et al.*, 44 CCPA 67, C.A.D. 639 (1957); A celluloid baby with movable hands on a chenille stem either with or without a milk bottle and diaper, mostly used by florists in making up table decorations, *M. Adler's Son, Inc., et al. v. United States*, 38 Cust.Ct. 466, Abs. 60634 (1957); A mechanical dressed crawling baby which moved along a flat surface in a crawling posture when wound by a key, *Brechner Bros. v. United States*, 58 Cust.Ct. 272, C.D. 2959 (1967); *Lewis Galoob Co. et al. v. United States*, 67 Cust.Ct. 421, C.D. 4308 (1971); A papier-mache Hawaiian hula girl,

---

**4.** For this proposition, plaintiff cites *Parksmith Corporation v. United States*, 71 Cust.Ct. 12, C.D. 4463, 365 F.Supp. 461 (1973), aff'd 62 CCPA 76, C.A.D. 1149, 514 F.2d 1052 (1975). That case, it is to be noted, involved souvenir replicas of the Empire State Building, Statue of Liberty, etc., which were classified by Customs under item 653.80 as silver plated "articles not specially provided for of a type used for household, table or kitchen use"—and which were held by the court to be properly classifiable under item 657.75 as articles of lead. In reaching this conclusion, the court in *Parksmith* found that the importations in question lacked any utilitarian nature and were primarily decorative objects. The crucial consideration is that in *Parksmith* the court was dealing with a tariff provision, item 653.80, under which, by its specific terms, the *use* of the article was of paramount importance.

5″ in height, mounted by a spring on a magnetic holding base used on the front dash or rear seat deck of a car as a decorative item and swaying with the motion of the auto in a hula dance fashion, *American Customs Brokerage Co. et al. v. United States, supra,* 60 Cust.Ct. 23.

Plaintiff, on the other hand, relies on several other cases where miniature representations of persons were held not to be dolls. One of these cases is *M. Pressner & Co. v. United States,* 24 Cust.Ct. 77, C.D. 1211 (1950) where the court found that merchandise consisting of celluloid figures representing football players which could be pinned on the clothing of the purchaser, were not dolls in that they were worn as badges or insignias and not as ornaments and, therefore, did not come within the common meaning of the term doll. See also *M. Pressner & Co. v. United States,* 7 Cust.Ct. 106, C.D. 546 (1941). Manifestly, in the case before us, the articles in question are not worn on clothing.

Another case relied on by plaintiff is *Louis Marx & Co., Inc. v. United States,* 65 Cust.Ct. 672, C.D. 4156 (1970) which involved hand-painted reproductions of the presidents of the United States mounted on platforms. These articles had been classified by the government as toy figures of animate objects and were held by the court to be dutiable under the provision for figurines of plastic. What is particularly significant is that the provision for dolls was not involved in that case; the sole issue rather was whether the articles were or were not "toys" as that term was defined in the tariff schedules.

Plaintiff further cites *Barum Co., Inc. v. United States,* 30 Cust.Ct. 414, Abs. 57251 (1953) to support its contention that the use or manner in which a figurine is used is an essential element in deciding whether that figurine is a doll. *Barum,* however, is also distinguishable from the case before us. In *Barum* the merchandise consisted of a hollow soft rubber figure of a monkey and of an elephant with simulated clothing painted on the body of each and a squeeze whistle

firmly attached to the back. The articles were conceded by the parties to be toys and the sole remaining question was whether they were the kind of toys which fell under the doll provisions of the Tariff Act of 1930. The court found that the articles were not dolls because they were not in human form and because the metal whistle—which was an outstanding characteristic—rendered it a toy rather than a doll. Since the imports in our case are in human rather than animal form and do not possess whistles, *Barum* is clearly not in point.

As we have seen, the common meaning of the word "doll" encompasses a great variety of merchandise. Perhaps because the variety is so vast, the courts have not been able to render a comprehensive definition of the term "doll", nor have they been able to " . . . make any all-embracing finding as to what is a doll or to hold that all small figures are dolls . . . "[5] Nonetheless, there does appear to be a certain amount of agreement among the lexicographical authorities. To illustrate, we start with the following lexicographic authorities to which reference was made in *Louis Wolf & Co., Inc. v. United States, supra,* 15 Cust.Ct. at 160:

. . . [W]e are of opinion that the common meaning of that term [doll] is sufficiently comprehensive to include all dolls, whether or not they are toys. In support of this view, it will be noted that the secondary definition of "doll" as given in Webster's New International Dictionary, 2d Edition, 1936, reads:

. . . any similar figure for play or *ornament* [Italics supplied].

This broader view is further borne out by a comprehensive article on the subject of dolls appearing in the Encyclopaedia Britannica, 14th Edition, wherein the history, development and use of various types of dolls are set forth in detail, indicating besides their use as playthings for children, wide use in religious rites and other ceremonies in many parts of the world from earliest times to the present day.

5. *Louis Wolf & Co., Inc. v. United States, supra,* 15 Cust.Ct. at 161.

More recent lexicographical authorities agree that the word "doll" encompasses a broad spectrum of articles which are commonly known as dolls. Thus in Webster's *New International Dictionary* (2d ed., 1953) p. 767, a doll is described as:

doll . . . 2. A child's puppet; esp., a toy baby for a child; any similar figure for play or ornament. . . .

In Vol. 9 *Encyclopedia Americana* (Internat. ed., 1973) p. 255, a doll is described as:

DOLL, a figurine of a human being. The word was first used for the child's toy about 1700, possibly as a contraction of Greek eidolon ("idol"), but more probably from the girl's name "Doll" which was short for "Dorothy." Some authorities now use the word only to refer to the child's toy. Other classes of dolls include religious figurines, objects of art and *souvenirs.* [Emphasis added.]

In Vol. 8 *Collier's Encyclopedia* (1973 ed.) p. 313, a doll is described as:

DOLL, a plaything usually in the form of a baby or child, widely cherished by small girls; also, the ornamental figurines collected by adults as objects of art, curios, *keepsakes,* or *souvenirs.* [Emphasis added.]

Viewing the samples before us, it appears obvious that they meet the definition of a doll cited above. Furthermore, the testimony makes it clear that the articles are souvenirs or keepsakes which are defined as follows:

*Webster's New World Dictionary of the American Language* (College ed., 1962):

souvenir—n. something kept or serving as a reminder of a place, an occasion or a person; keepsake; memento.

keepsake—n. something kept, or to be kept, for the sake of, or in memory of, the giver; memento.

*Webster's New International Dictionary* (2d ed., 1948):

souvenir—n. . . . That which serves as a reminder; a remembrancer; memento; keepsake.

A memory; recollection.

keepsake—n. . . . Anything kept or given to be kept, for the sake of the giver; a token of friendship.

Applying these definitions to the merchandise before us, we are reinforced in our view that the importations are within the common meaning to the term doll. As we have seen, these articles are sent as a greeting or a reminder of an occasion (e. g., "Happy Birthday," "Get Well Soon") or of a person (e. g., "Guess Who I Like," "I Love You," "I Wuv You"); thus, they meet the definition of souvenirs or keepsakes which as we have observed are within the ambit of those articles commonly known as dolls.

Finally, we come to plaintiff's argument that the importations cannot be considered dolls because they are not merchandised as such. While the manner in which an article is merchandised is one of the factors to be considered in determining its classification, it is not determinative. E. g., *S. Y. Rhee Importers v. United States, supra,* 61 CCPA at 4; *United States v. Ignaz Strauss & Co., Inc.,* 37 CCPA 32, C.A.D. 415 (1949); *Novelty Import Co., Inc. v. United States,* 53 Cust.Ct. 274, Abs. 68780 (1964).

For the foregoing reasons, we hold that the articles in issue were properly classified as dolls under item 737.20. Plaintiff's claim is overruled and judgment will be entered accordingly.