**R. DAKIN & COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 86–11–01431.**

United States Court of International Trade.

Nov. 30, 1990.

Stein Shostak Shostak & O'Hara, S. Richard Shostak and Robert Glenn White, Los Angeles, Cal., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty.-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, New York City, Mark S. Sochaczewsky, of counsel; Stephen Berke, U.S. Customs Service, Washington, D.C., for defendant.

MEMORANDUM OPINION

TSOUCALAS, Judge:

Plaintiff, R. Dakin & Company, brings this action pursuant to 19 U.S.C. § 1514 (1982 & Supp. V 1985) to challenge the United States Customs' ("Customs") classification of merchandise as "dolls, other" under item 737.24, TSUS, with duty assessed at the rate of 14.1 and 13.4 percent (depending on the date of entry). All liquidated duties have been paid and administrative remedies exhausted. Accordingly, this Court's jurisdiction is properly invoked under 28 U.S.C. § 1581(a) (1982).

*Background*

Between August 21, 1984 and April 15, 1985, plaintiff was the importer of record on various entries from Korea of merchandise invoiced as "Kari–Me Baby."[1] The

---

1. The invoice lists assorted styles of what is essentially the same article. They are referred to as Kari–Me Baby, item 08–0360; Kari–Me Baby (Ethnic), item 08–0430; Boy Kari–Me Baby, item 08–0550; Kari–Me Baby Pink, 07–0162; Kari–Me Baby Blue, item 07–0163; and Kari–Me Baby and Teddy, item 07–0164.

article at issue, which all parties agree was designed to resemble a newborn infant wrapped in a blanket, is essentially a puppet-like toy made up of a doll head and hands attached to a sleeve of bunting. There is an opening in the rear of the bunting in which one's arm can be inserted to manipulate the puppet.

Upon liquidation, Customs classified the goods as "dolls, other" under item 737.24, TSUS, and assessed duties at the rate of 14.1 and 13.4 percent *ad valorem* (depending upon the date of entry). Plaintiff filed timely protests to the classification, maintaining that the merchandise should have been classified as "toys, and parts of toys, not specially provided for" and entered duty free pursuant to the Generalized System of Preferences ("GSP").[2] The protests having been denied, plaintiff initiated this action for judicial review.

The action, designated a test case, is presently before the court on cross motions for summary judgment upon a joint statement of facts. Oral argument on these motions was heard by the Court on August 22, 1990.

### Discussion

■ Customs' classifications are presumed to be correct. 28 U.S.C. § 2639(a)(1) (1982). The burden of proving otherwise rests upon the party challenging it. *Id.; Brookside Veneers, Ltd. v. United States*, 847 F.2d 786 (Fed.Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988); *Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed.Cir.), *reh'g denied*, 739 F.2d 628 (Fed.Cir.1984).

**2.** It is not disputed that the merchandise at issue is a product made wholly in Korea, a country eligible for beneficial tariff treatment under the GSP.

**3.** Item A* 737.95, TSUS, provides in pertinent part:

SCHEDULE 7, Part 5

Toys, and parts of toys, not specially provided for:

    . . . .
    Other:
        . . . .

A * 737.95  Other . . . . . . . . . . . . . . 10.9% ad val.

Customs classified the merchandise under item 737.24, TSUS, which provides the following:

SCHEDULE 7, Part 5

Dolls, and parts of dolls including doll clothing:
    . . . .
    Other:
        Dolls (with or without clothing):
        . . . .

737.24      Other . . . . . . . . . . . . .14.1% ad val.

Plaintiff maintains the merchandise, which it describes as puppets, cannot be properly classified within this item because they lack an essential characteristic of dolls, namely, a torso. Instead, plaintiff contends the articles are best classified under item A* 737.95, TSUS.[3]

■ It is well settled that substantial deference should be afforded to common and commercial meanings of a given term when determining its proper interpretation for tariff purposes. *Toyota Motor Sales, Inc. v. United States*, 7 CIT 178, 182, 585 F.Supp. 649, 653 (1984), *aff'd*, 753 F.2d 1061 (Fed.Cir.1985). It is equally ensconced that courts may refer to dictionaries and other lexicographic authorities to ascertain the common meaning of the terms. *Mast Indus., Inc. v. United States*, 9 CIT 549, 552, 1985 WL 25786 (1985), *aff'd*, 786 F.2d 1144 (Fed.Cir.1986).

Common definitions for the term "doll" include an *"image* of a human being (commonly of a child or lady) used as a plaything," *The Oxford English Dictionary* 937 (2d Ed.1989) (emphasis added); and "a small-scale figure of a human being (as of a baby or child) used esp. as a child's plaything; b: puppet," *Webster's Third New International Dictionary, Unabridged* 669 (1981); as well as "a child's toy representing a person; a *puppet," Funk & Wagnalls Standard Dictionary Combined*

Articles for which the designations "A" or "A *" appear in the column entitled "GSP" of the schedules are those designated by the President to be eligible articles for purposes of the GSP pursuant to Section 503 of the Trade Act of 1974. Whenever an eligible article is imported into the customs territory of the United States directly from a country or territory listed in subdivision (c)(1) of this headnote, it shall receive duty-free treatment.

*with Britannica World Language Dictionary* 376 (Int'l Ed.1963) (emphasis added); and "a child's toy modelled, however crudely, in human or animal form." *The New Encyclopaedia Britannica* 156 (15th Ed. 1986). The broad definitional spectrum of the term would seem to indicate then, contrary to plaintiff's assertions, that a liberal interpretation of "doll" is commonplace.

The lexicographic history of the term "puppet," which Dakin itself admits the articles to be, further hinders plaintiff's argument. The word "puppet" is derived from the Middle French "poupette"—meaning little doll, and the modern French "poupee"—meaning doll. *See Webster's Third New International Dictionary, Unabridged* 1844 (1986). Moreover, lexicographic sources define "puppet" as "a small-scale figure of a human or other living being often constructed with jointed limbs, appropriately painted and costumed, and moved usu. on a small stage by a rod or by hand from below or by strings or wires from above; DOLL la" and a "figure (usually small) representing a human being; a child's doll." *Id.; The Oxford English Dictionary* 855. These definitions provide clear indication that puppets are included within the broader realm of dolls. Indeed, the cross-referencing of the definitions of "doll" and "puppet" demonstrates that the terms are not only mutually inclusive, but also virtually synonymous.

The meaning of the term "doll" for customs purposes is equally broadbased. For example, Customs determined that imported broom dolls *without* limbs were classifiable as dolls, because the "illusion" of limbs was created. *Customs Headquarters Ruling* 057131 (Oct. 3, 1978). Similarly, dolls "giving the impression" of blouse sleeves protruding from a burlap jumper which extends all the way to the ground, hiding the fact that there are no legs or feet," were classifiable as dolls under the TSUS. *New York Seaport Area Letter* 826847 (Feb. 1, 1988).

In fact, Customs has in the past specifically stated that the absence of legs or torso *would not* preclude an otherwise doll-like figure from being classified as a doll,

and that the "only requirement [for classification as a doll] is that the figure be a full bodied *representation* of a character with human characteristics." *Customs Headquarters Ruling* 065423 (Jan. 22, 1981) (emphasis added); *see also Customs Headquarters Ruling* 075101 (Jan 30, 1985). Hence, the Court finds no lexicographic or commercial basis for plaintiff's contention that a limited definition of the term "doll" should be adopted in this case, nor does it find in the common definitions any requirement that a doll possess a torso or body. Neither has caselaw created such a standard.

■ To the contrary, the pertinent caselaw adopts a broad definition of the term "doll" for classification purposes. Indeed, the term "doll" has traditionally been interpreted to encompass a vast variety of merchandise. *See e.g., Russ Berrie & Co. v. United States,* 76 Cust.Ct. 218, 224, C.D. 4659, 417 F.Supp. 1035, 1040 (1976); *Brechner Bros. v. United States,* 58 Cust.Ct. 272, 276, C.D. 2959 (1967). To be classifiable under the TSUS provision for dolls, a "doll" is not even required to possess distinct human features as long as "its overall effect is representative of a human." *Wregg Imports v. United States,* 10 CIT 679, 680, 1986 WL 11880 (1986). The court in *Wregg,* when determining the proper classification of nested "matreshka dolls," noted that:

> After examination of the relevant caselaw in which particular articles were adjudged to be dolls or not dolls, the Court finds no requirement that a doll have distinct arms, legs and other human features. Often dolls do not have identifiable hands, fingers, toes, feet, ears and other human attributes, while some dolls only have these and similar features such as nose, mouth, and eyes painted-on.

10 CIT at 680.

■ Upon examination of the subject merchandise, it is obvious that while the "Kari–Me Babies" do not possess tangible torsos, they are clearly a representation of full-bodied babies. This is most persuasively evidenced by the significant resemblance that the articles bear to a fully

limbed infant wrapped in a blanket. Thus, considering the flexible criteria that has traditionally been applied for the classification of dolls, there is little doubt that the "Kari–Me Baby" is a "doll" within the common commercial meaning of that term.

Finally, the Court finds additional reinforcement for this conclusion in plaintiff's own repeated references to the subject merchandise as dolls. *See Defendant's Exhibits* A, B, C, D, E and F. Consumer and trade magazines refer to the subject merchandise as dolls. *Defendant's Exhibit* M. The patent application filed by plaintiff also refers to the article as a doll and plaintiff referred to the articles as dolls in its press releases, brochures and ordering literature. *Defendant's Exhibits* I, J and N.

Although, while it is true, as Dakin maintains, that the manner in which an article is merchandised is not solely determinative in the classification of the merchandise, it is most certainly clear that the importer's own consistent reference to the subject merchandise as a "doll" *is* a factor—albeit not the only one—to be considered for tariff classification purposes. *See Russ Berrie*, 76 Cust.Ct. at 226, 417 F.Supp. at 1041; *S.Y. Rhee Importers v. United States*, 61 CCPA 2, 4, C.A.D. 1108, 486 F.2d 1385, 1387 (1973); *Novelty Import Co. v. United States*, 53 Cust.Ct. 274, 276, Abs. 68780 (1964).

Hence, in the instant action plaintiff has failed to overcome the presumption of correctness that attaches to Customs' classifications. 28 U.S.C. § 2639(a)(1); *Jimlar Corp. v. United States*, 11 CIT 501, 670 F.Supp. 1001 (1987). Accordingly, the Court finds that Customs' classification of the imported merchandise under item 737.-24, TSUS, is affirmed and plaintiff's action is dismissed.