JIMLAR CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant.

Court No. 80-7-01092.

United States Court of
International Trade.

July 14, 1987.

Stedina & Deem (Charles P. Deem, New York City, at the trial and on the brief), for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch (Judith Barzilay, at the trial, and Florence M. Peterson, New York City, on the brief), for defendant.

## MEMORANDUM OPINION

RE, Chief Judge:

The question presented in this case pertains to the proper appraisement or valuation, for customs duty purposes, of certain men's footwear imported from Taiwan. The Customs Service appraised the merchandise on the basis of American selling price, in accordance with section 402a(g) of the Tariff Act of 1930, 19 U.S.C. § 1402(g) (1976) (repealed 1979).

Plaintiff protests the appraisement of the merchandise on the basis of American selling price, and contends that the imported footwear is not "like or similar" to the domestic prototypes used by customs as a basis for comparison. Specifically, plaintiff contends that the domestic prototypes are not commercially interchangeable, competitive, or an acceptable substitute for the imported merchandise. Plaintiff claims that "appraisement should have been made

on the basis of Export Value at $2.619 per pair."

Defendant contends that plaintiff has failed to rebut the statutory presumption of correctness which attaches to the government's appraisement of the imported merchandise. Defendant concedes that the imported footwear is not "like" the domestic prototypes used by Customs, but maintains that the appraisements by Customs were correct because both types of imported footwear are "similar" to the domestic prototypes.

■ The question presented is whether the domestic prototypes used by Customs as the basis for valuation are "similar" to the imported footwear. If the domestic prototypes are not similar, the valuation was improper, and the appraisement by Customs should have been made on an alternative basis. See A. Zerkowitz & Co. v. United States, 58 CCPA 60, 70, 435 F.2d 576, 584 (1970), cert. denied, 404 U.S. 831, 92 S.Ct. 72, 30 L.Ed.2d 60 (1971); Samuel Brilliant Co. v. United States, 9 CIT ——, Slip Op. 84–41, at 2 (Apr. 4, 1985); Stride Rite Corp. v. United States, 9 CIT ——, 605 F.Supp. 279, 282, aff'd, 775 F.2d 1158 (Fed.Cir.1985).

After careful examination of the evidence adduced at trial, the contentions of the parties, and the relevant case law, it is the determination of the court that plaintiff has not overcome the presumption of correctness which attaches to the government's determination of dutiable value. See 28 U.S.C. § 2639(a)(1) (1982); New Trends, Inc. v. United States, 10 CIT ——, ——, 645 F.Supp. 957 (1986). Accordingly, the valuation of the imported merchandise by Customs is affirmed.

The Tariff Act defined American selling price as:

the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

Tariff Act of 1930, § 402a(g), 19 U.S.C. § 1402(g) (1976) (repealed 1979).

The merchandise consists of fabric upper, rubber-soled men's casual shoes, style Nos. 43–J–6474 (6474) and 43–J–6475 (6475). The 6475 is an oxford or laced shoe, and the 6474 is a slip-on shoe.

The 6474 footwear was the subject of two court actions, which are presently consolidated under Court No. 80–7–01092. In the first action, the 6474 footwear was appraised and liquidated at $8.50 per pair, less 2 percent or $7.50 per pair, less 2 percent, depending on the date of entry, using the Casablanca style footwear manufactured by P.F. Industries, as the domestic prototype. In the second action, the 6474 footwear was appraised and liquidated at $8.00 per pair, using the Wellco style no. 22804 as the domestic prototype. The 6475 footwear was appraised and liquidated at $9.00 per pair on the basis of American selling price, using Wellco style no. 22806 as the domestic prototype.

■ A determination as to whether imported merchandise is similar to domestic prototypes is controlled by a four-part test. The factors to be considered include: (1) similarity of material, (2) commercial interchangeability, (3) adaptability to the same use, and (4) the competitive character of the imported and domestic merchandise. See A. Zerkowitz & Co. v. United States, 58 CCPA 60, 65, 435 F.2d 576, 580, (1970), cert. denied, 404 U.S. 831, 92 S.Ct. 72, 30 L.Ed.2d 60 (1971); Samuel Brilliant Co. v. United States, 11 CIT ——, Slip Op. 87–40, at 3 (Apr. 1, 1987).

■ At trial, a number of exhibits were entered by the parties, and the court heard the testimony of three witnesses. The witnesses testified as to their opinions wheth-

er the domestic prototypes were similar to the imported footwear.

On cross-examination, both of plaintiff's witnesses testified that the materials used in the construction of the imported merchandise and the domestic prototypes are basically similar. As characterized by defendant's witness, all of the shoes are "fabric rubber-soled casual" shoes. Thus, the testimony of all witnesses makes clear that the imported merchandise and the domestic prototypes are made of similar material.

In a case that involves footwear, the second factor, commercial interchangeability, is usually related to the third factor, adaptability to the same use. *See A. Zerkowitz & Co. v. United States,* 58 CCPA 60, 66 n. 4, 435 F.2d 576, 581 n. 4 (1970), *cert. denied,* 404 U.S. 831, 92 S.Ct. 72, 30 L.Ed.2d 60 (1971); *see also Samuel Brilliant,* Slip Op. 87–40, at 8–9.

The testimony of all witnesses characterized the imported merchandise and their domestic prototypes as casual men's shoes. Thus, it is clear that the Jimlar 6474 and its domestic prototypes, the Casablanca and the Wellco 22804, have similar functions and uses as casual slip-on men's shoes. Additionally, the 6475 and the Wellco 22806 are adaptable to the same use as casual men's oxfords.

Plaintiff's witnesses, however, testified that the imported merchandise and the domestic prototypes are not commercially interchangeable. Specifically, they testified that the domestic prototypes, the Casablanca shoe, with its espadrille construction, and the three-colored Wellco 22804, appealed to "high fashion" customers, whereas the Jimlar 6474, with its California construction, appealed to the comfort-oriented customer. Additionally, they testified that the oxfords, the Wellco 22806, characterized as a boat shoe, and the Jimlar 6475, are not commercially interchangeable because the Wellco 22806 was sold to a youthful, fashion conscious market, and the Jimlar shoe was sold to a more conservative market interested in comfort.

Although the defendant's witness conceded that there were some styling differences between the imported shoes and their domestic prototypes, he nevertheless gave reasons why a customer would be satisfied with either shoe. On cross-examination, when asked why he thought the shoes were substitutes for one another, he replied that "if the consumer came in and you were out of the size in ... one, he would very readily buy [the other] shoe instead because it's the same price and it's the same use and they have similar styles and comfort features." In addition, on cross-examination, defendant's witness was asked whether the domestic prototypes were aimed at a particular market. In order to indicate that the targeted market was broad, he replied, "[y]ou aim, but you don't have a rifle. It's a shotgun."

The differences in styling, therefore, do not persuade the court that the Customs Service erred in their selection of the domestic prototypes. It has long been the rule that goods may be legally similar for appraisement purposes even though numerous differences exist. *See Albert F. Maurer Co. v. United States,* 51 CCPA, 114, 120, C.A.D. 845 (1964).

The final factor in the four-part test, competitive character, highlights the similarity between the imported shoes and their domestic prototypes. As this court has noted, "[t]wo important aspects of competitiveness for comparison are price and place where marketed or sold." *Samuel Brilliant,* 11 CIT —, Slip Op. 87–40, at 6.

The testimony adduced at trial revealed that the imported shoes and the domestic prototypes sold for approximately the same price. The witnesses also testified that the imported shoes and domestic prototypes would be marketed together and would even be displayed in the same area in the retail stores. From all of the testimony, the court concludes that the imported shoes and the domestic prototypes are competitive merchandise, and that the domestic prototypes were properly used by Customs as the basis for the valuation.

Although plaintiff contends that the domestic prototypes are not similar to the imported shoes, it has failed to introduce sufficiently persuasive evidence to prove

that the merchandise was improperly appraised by Customs Service.

Therefore, it is the determination of the Court that plaintiff has not rebutted the presumption of correctness that attaches to the appraisal by the Customs Service. Accordingly, the appraised values are affirmed, and the action is dismissed.