MIDWEST OF CANNON FALLS INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Consolidated Court No. 92–03–00206

(Dated January 18, 1996)

*Serko & Simon (Joel K. Simon* and *Leibert L. Greenberg),* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Mikki Graves Walser);* Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service *Sheryl French),* of Counsel, for defendant.

OPINION

GOLDBERG, *Judge:* This matter is before the Court following trial *de novo.* It involves the proper tariff classification of approximately eighteen items typically used for decoration during holiday festivities,[1] and it calls upon the Court to interpret the scope of the term "ornament" as found in heading 9505 of the Harmonized Tariff Schedules of the United States (HTSUS). This Court holds that the term "ornament" does not require that an item hang, be inexpensive, or traditional in its motif. As to the classification of specific imports, the Court finds in favor of the plaintiff in part, and in favor of the defendant in part. The Court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

BACKGROUND

Midwest of Canon Falls Inc. ("Midwest") imports holiday related merchandise and then resells it to retailers. The merchandise at issue includes nutcrackers, stocking hangers, figurines of Saint Nicholas and crew, mugs and pitchers with a jack-o-lantern design, figurines of rabbits, heart-shaped metal wreaths, and turkey-shaped terra cotta planters. Generally, these items are advertised and sold only to consumers prior to the particular holiday with which they are associated, the vast majority being sold during the Christmas season.

---

[1] The parties stipulated to a number of other items prior to entry of the Court's judgment, which are not discussed in this opinion.

The products were entered in 1990 and 1991. All of the products were liquidated in 1991. The United States Customs Service ("Customs") classified the products variously as earthenware ornamental ceramic articles, dolls, glassware, other items for Christmas festivities that are not ornaments, ceramic tableware and kitchenware articles, other ornaments of base metal, and other articles of plastics.

Midwest claims that the Christmas related items should be classified as Christmas ornaments or as other Christmas festive articles. Midwest argues that the Halloween, Thanksgiving, Valentine's Day, and Easter related items should be classified as other festive articles.

## DISCUSSION

### I. *Definition of Christmas Ornament Under Heading 9505, HTSUS:*

Customs argues that the Christmas related imports may not be classified under heading 9505, HTSUS, as "ornaments" because items that fall within the scope of the term "ornament" must hang from a tree, are inexpensive, and traditionally are associated with Christmas. Plaintiff, on the other hand, claims that items do not need to meet all of these requirements to fall within the scope of the term "ornament." The Court agrees with plaintiff. Customs also argues that ornaments must be made of non-durable material. The Court need not decide this issue because it finds that all of the items at issue are made of non-durable material.

The meaning of a tariff term is a question of law. *Brookside Veneers, Ltd. v. United States,* 6 Fed. Cir. (T) 121, 124, 847 F.2d 786, 788, *cert. denied,* 488 U.S. 943 (1988). Courts interpret the tariff acts in order to carry out legislative intent. *Nippon Kogaku (USA), Inc. v. United States,* 69 CCPA 89, 673 F.2d 380 (1982). The first source for determining legislative intent is the statutory language. *United States v. Esso Standard Oil Co.,* 42 CCPA 144, 155 (1955). In ascertaining the plain meaning of a particular statutory term, the Court presumes that Congress frames tariff acts using the language of commerce. *Nylos Trading Co. v. United States,* 37 CCPA 71, 73 (1949). The Court also presumes that the commercial meaning of a tariff term coincides with its common meaning, in the absence of evidence to the contrary. *United States v. C.J. Tower & Sons,* 48 CCPA 87, 89 (1961). The Court may rely upon its own understanding, and consult standard lexicographic and scientific authorities to determine the common meaning of a tariff term. *Brookside Veneers,* 6 Fed. Cir. (T) at 125, 847 F.2d at 789.

This Court begins, therefore, by examining the statute. Heading 9505, HTSUS, uses the term "ornaments," without elaboration. The dictionary defines the term "ornament" to mean "something that lends grace or beauty: a decorative part or addition." *Webster's Third New International Dictionary* 1592 (Unabridged, 1986). *See also, e.g., Webster's New World Dictionary* 955 (3rd College ed. 1988) ("anything serving to adorn; decoration; embellishment"). No persuasive evidence was presented at trial that, among consumers and industry participants, the

common or commercial meaning of the term "ornament" is restricted to inexpensive or traditional items. Yet, evidence presented at trial did demonstrate that the term "ornament" is often understood by consumers and industry participants to mean items that hang from a tree. However, the evidence failed to demonstrate that this interpretation was consistent. Based on the statutory language, as interpreted in light of dictionary definitions and the commercial meaning attached to the term "ornament" by consumers and industry participants, this Court will not impose the requirements that Customs proposes.

Customs' arguments are based largely on the Explanatory Notes. Explanatory Notes, while not controlling, may be used to clarify the HTSUS. *Mita Copystar America v. Unites States*, ____ Fed. Cir. (T) ____, 21 F.3d 1079, 1082 (1994).

Customs argues that "ornament" should be limited to inexpensive items because the Explanatory Notes to heading 9505 provide examples of items made out of such materials as "paper, metal foil, glass fibre, etc." Explanatory Notes, 95.05(A)(1). The Court observes that the list of examples in the Explanatory Notes is not meant to be exhaustive. The Explanatory Notes merely state that festive articles, of which ornaments are a subgroup, "include" the examples given. *Id.* at 95.05(A). Also, heading 9505 explicitly covers additional materials not mentioned in the Explanatory Notes: glass, wood, and plastic. *See* 9505.10.10, 9505.10.15, and 9505.10.40, HTSUS. The only restriction as to the composition of articles classified under heading 9505 is found in the Chapter 95 Notes, which, unlike the Explanatory Notes, are controlling. The Chapter Notes state that precious metals, pearls, or precious stones may comprise only "minor constituents" of articles classified under heading 9505. Chapter 95 Notes, 2, HTSUS. None of the items at issue violate this restriction. The Court will not impose additional restrictions on constituent materials beyond those explicitly enumerated for the purpose of limiting the value of an item. Nor will the Court introduce a monetary restriction where none is present in the HTSUS, the Chapter Notes, or the Explanatory Notes.

Customs also argues that "ornament" should be limited to items having traditional Christmas themes because the Explanatory Notes state, by way of example, that items "traditionally used at Christmas" are included under the heading. Explanatory Notes, 95.05(A)(2). The Court is not persuaded by Customs' argument. The language of the Explanatory Notes is inclusive; neither the HTSUS nor the Explanatory Notes explicitly exclude ornaments of non-traditional themes or design. Explanatory Notes, 95.05(A).

Confining the term "ornament" to traditional themes also runs counter to commercial reality and consumer practices in the United States. Unrefuted evidence presented by the plaintiff at trial shows that during the holidays, people in the United States decorate their homes and Christmas trees with items having modern as well as traditional themes. Manufacturers design new decorative items each year. For

instance, Midwest recently introduced Christmas decorations based on Disney movies such as The Lion King. Another example of this is the specialty nutcrackers, those portraying professionals and the like, which are displayed and sold principally, if not exclusively, at Christmas as Christmas decorations. Absent legislative intent to the contrary, the term "ornament" should be construed to embrace evolving consumer tastes. *See Atlas Copco North America, Inc. v. United States,* 17 CIT 1163, 1168, 837 F. Supp. 423, 426–27 (1993) ("It is conducive to the steady and predictable development of the tariff law that inventive improvements which continue to be known by a traditional name not be excluded from a class simply because of their new physical characteristics."). This Court therefore refrains from confining the term "ornament" to items possessing themes "traditionally" associated with Christmas.

Customs also argues that the term "ornament" should be restricted to items that hang on trees. The basis of this argument is a list of examples found in the Explanatory Notes, which includes festoons, garlands, tinsel, and lanterns. Explanatory Notes, 95.05(A)(1). Customs contends that all of these are objects that hang on a Christmas tree. The Court disagrees that the term "ornament" should be confined to items that hang on trees. The Explanatory Note relied on by Customs specifies that festive articles "include" the above mentioned examples. Explanatory Notes, 95.05(A)(1). It does not suggest that this list is exhaustive of items that come within the term "ornament" or their characteristics. Moveover, in drafting the HTSUS, Congress demonstrated its intent to expand the definition of "ornament" to include items beyond those that hang on trees. The predecessor to the HTSUS, the Tariff Schedules of the United States (TSUS), contained item 772.95.00 entitled "Christmas tree ornaments." TSUS, 1986. In the HTSUS, Congress deleted the qualifier "tree."[2] Customs is asking this Court to read the term "tree" back into the statute. The Court declines to do so.

Finally, Customs argues that items that fall within the scope of the term "ornament" must be made of non-durable materials. The argument is based on the Explanatory Notes to heading 9505, which state that items falling within the heading are items "which in view of their intended use are generally made of non-durable material." Explanatory Notes, 95.05(A). The Court need not decide whether durability is a requirement. The present case primarily involves items made of materials that are explicitly covered by heading 9505, HTSUS: glass, wood, and plastic. *See* 9505.10.10, 9505.10.15, and 9505.10.40, HTSUS. Items that are made of materials explicitly enumerated under heading 9505, HTSUS, cannot be excluded from that heading on the basis of a restric-

---

[2] The Court recognizes that other parts of the HTSUS refer to "Christmas tree ornaments" when referring to heading 9505, HTSUS. *See, e.g.,* Chapter 70 Notes, 1(f), HTSUS (excluding "Christmas tree ornaments or other articles of Chapter 95" from the glass and glassware heading). In this Court's view, these inconsistencies appear to be an oversight. Congressional intent is demonstrated more clearly by changing Chapter 95, rather than its failure to modify all cross-references to it in the HTSUS.

tion on materials contained in the Explanatory Notes. The other items do not appear to be made of durable materials. "Durable" is defined in the dictionary as "lasting in spite of hard wear or frequent use." *Webster's New World Dictionary* 422 (3rd College ed. 1988). Evidence presented at trial suggests that the other subject imports, the ceramics and figurines made of various resins, are not made of materials that enable them to withstand hard wear or frequent use. The single possible exception is the cast iron stocking hangers. Even the stocking hangers, however, are ornately painted, which, in view of their intended use as a decorative item during Christmas, indicates that they are not designed to withstand hard wear or frequent use. That all of the subject imports might survive many Christmas seasons because they are packed carefully and stored at the end of each season does not transform the imports into items made of durable materials.

Accordingly, the Court holds that the term "ornament" as used in heading 9505, HTSUS, does not require items to hang, be inexpensive, or traditional in theme or design.

## II. *Classification:*

The Court now turns to the appropriate classification of the various items at issue.

Customs' tariff classification decisions are presumed to be correct; the importer has the burden of proving otherwise. 28 U.S.C. § 2639(a)(1) (1988). To determine whether the importer has overcome this presumption, the Court must consider whether Customs' classification is correct, both independently and in comparison with the importer's proposed alternative. *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied,* 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984).

### A. *Subheading 9502.10.40, HTSUS: Nutcrackers, Wooden Pull Toys, Toy Smokers, Porcelain and Fabric Gentleman Santa, Mrs. Claus Figures Made of Fabric Mache:*

The subject imports are miniature wooden pull toys in the form of an ice skater, which can hang from a tree by its string; toy smokers, which are wooden figures of Santa Claus that are hollowed out to burn incense and expel the smoke through a pipe which the figure "smokes;" a porcelain and fabric mache Santa in English gentleman's clothing; a fabric mache Mrs. Claus figure; and nutcrackers, items popularized by the ballet The Nutcracker. Of the over one hundred models of nutcrackers that Midwest imports, only fifteen are Santa Claus or Christmas elf figures. Approximately fifty four are traditional soldier or king nutcrackers of various nationalities. The rest are specialty nutcrackers which portray such figures as American presidents, athletes, and professionals. All of the items are three-dimensional figures, representing either imaginary or real human beings in caricature form.

Customs classified the imports as "dolls" not over 33 centimeters in height under subheading 9502.10.40, HTSUS, and imposed a duty of

12% *ad valorem*. Plaintiff argues that the nutcrackers should be classified as Christmas ornaments made of wood under subheading 9505.10.15, HTSUS, which carries a tariff of 5.1%, and that the other imports should be classified as Christmas ornaments other than those made of wood or glass under subheading 9505.10.25, HTSUS, which carries a tariff of 5%.

In determining whether Customs properly classified the imports as "dolls," the first matter for determination is whether the imports are within the common meaning of the term "doll." The Court concludes that they are classifiable as dolls.

The definition of "doll" is broad. Dolls have many uses. For tariff classification purposes, the term "doll" is

> not confined to playthings for children but includes a wide range of other articles including but not limited to dolls for ornamentation such as boudoir dolls, souvenir or prize dolls, dolls for display or advertising purposes, and dolls sold as gag items, bar gadgets, adult novelties, etc.

*Russ Berrie & Co. v. United States,* 76 Cust. Ct. 218, 223, 417 F. Supp. 1035, 1039 (1976) (citations omitted). *See also,* Explanatory Notes, 95.02. Dolls may be used for ornamentation, decoration, art, and religious observance. *Russ Berrie,* 76 Cust. Ct. at 225–226, 417 F. Supp. at 1041 (citing various dictionary and encyclopedia sources). Dolls are representations of humans, in either realistic or caricature form. Explanatory Notes, 95.02. Dolls typically are made out of the same materials as the imports at issue: plastics, fabric, ceramics, wood, and paper mache. *Id.*

Given the broad definition of the tariff classification "dolls," both in terms of physical characteristics and the variety of their uses, the Court finds that the sample products presented all come within the common definition of the term.

The Court next considers plaintiff's proposed classification. Plaintiff argues persuasively that all of these items should be classified as Christmas ornaments. Evidence presented at trial shows that the items at issue are principally used to decorate the house or tree during the Christmas holiday season. The nutcrackers, for instance, frequently are given as Christmas gifts and then utilized by the recipient to decorate his or her home during Christmas. Based on the broad scope of the term "ornament" enunciated in Part I of this opinion, the Court finds that the items at issue are described accurately as Christmas ornaments.

The Court is presented with a case where the items can be classified either as dolls or as ornaments. Where an item is described by two headings, the Court is instructed to select the heading which provides the most specific description. General Rules of Interpretation (GRI) 3(a), HTSUS.

It is well established that the tariff classification "dolls" is an *eo nomine* provision. *Russ Berrie,* 76 Cust. Ct. at 223, 417 F. Supp. at 1039. An *eo nomine* provision is one which describes merchandise by a specific

name, usually one well known in the trade, which includes all forms of the article as if each were provided for by name in the tariff provisions. *Wregg Imports v. United States,* 10 CIT 679, 681 (1986). The tariff provision for Christmas ornaments, on the other hand, is best characterized as a use provision because the defining feature of an ornament is implied by its use.

A number of cases decided under the TSUS recognized a general rule of statutory construction that a use heading generally was more specific than an *eo nomine* heading. *See, e.g., Hartog Foods Int'l Inc. v. United States,* 15 CIT 475 (1991); *United States v. Siemens America, Inc.,* 68 CCPA 62, 653 F.2d 471 (1981), *cert. denied,* 454 U.S. 1150 (1982); *Rollix Bearing, Inc. v. United States,* 15 CIT 11, 757 F. Supp. 1412 (1991); *United States v. Snow's United States Sample Express Co.,* 8 Ct. Cust. App. 351 (1918). Cases decided under the TSUS, however, are not controlling for purposes of interpreting the HTSUS. Report of the Joint Committee on the Omnibus Trade and Competitiveness Act of 1988, H. Conf. R. No. 100–576, 100th Cong., 2d Sess. at 549–50.

Rather than adopting any rule for deciding between *eo nomine* and use classifications under the HTSUS, the Court will determine which classification is more specific based on all the facts and circumstances. First, the Court consults the Chapter Notes. It finds that these provide no guidance in this case. Next, the Court examines the Explanatory Notes. *See Totes, Inc. v. United States,* ____ Fed. Cir. (T) ____, 69 F.3d 495, 499 (1995). The Court finds that nothing in the Explanatory Notes, other than that already discussed, suggests that either classification more specifically describes the items at issue.

As such, the Court will apply the factors delineated in *United States v. Carborundum Co.,* 63 CCPA 98, 536 F.2d 373, *cert. denied* 429 U.S. 979 (1976), for classifying imports under the most specific heading: (1) the general physical characteristics of the merchandise; (2) the use, if any, in the same manner as merchandise which defines the class; (3) the expectations of the purchasers of the merchandise; (4) the channels of trade in which the merchandise moves; and (5) the environment of the sale of the merchandise (i.e. accompanying accessories and the manner in which the merchandise is advertised and displayed). In applying these factors, the Court notes that no single factor is determinative, and none are intended to be requirements for coming within any particular heading.

In the present case, application of the *Carborundum* factors suggests that the items at issue are more properly classified as ornaments than as dolls. In almost all cases, the general physical characteristics of the items include their motif in a Christmas theme. The single exception to this is the non-traditional nutcrackers which portray various professionals, athletic pursuits and other figures. As for the use factor, the evidence presented at trial establishes that all of the items are principally, if not exclusively, used only during the holiday season for the specific purpose of decorating or ornamenting the home or Christmas tree. *See* U.S.

GRI 1(a), HTSUS. Consumer expectations are indicated by the items' lack of functionality other than as decorative items, and their lack of suitability as decorative items outside the Christmas holiday period. The channels of trade in which the items are sold are defined primarily by marketing and sales during the months preceding the holiday season. The environment of sale includes advertising the items in special holiday catalogues and displaying them in separate holiday sections of retail stores. Thus, all the *Carborundum* factors favor classifying all the subject imports as Christmas ornaments, with the exception of the physical characteristics of the non-traditional nutcrackers.

Finally, in evaluating an *eo nomine* provision vis-a-vis a use designation, the Court takes into account the breadth of the name classification. Breadth undermines specificity. Where an *eo nomine* provision encompasses more and more disparate items, almost without limit, it necessarily begins to lose its specificity. "Dolls" is a broad classification that covers many disparate items. *See, e.g., Russ Berrie,* 76 Cust. Ct. at 224–5, 417 F. Supp. at 1035 ("Perhaps because the variety is so vast, the courts have not been able to render a comprehensive definition of the term 'doll', nor have they been able to '* * * make any all-embracing finding as to what is a doll or to hold that all small figures are dolls * * *.'") (quoting *Louis Wolf & Co. v. United States,* 15 Cust. Ct. 156, 161 (1945)); *House of Lloyd, Inc. v. United States,* 13 CIT 414, 416 (1989) ("The court cannot accept a blanket rule that every decorative article with some doll-like feature is simply a doll."). The breadth of the *eo nomine* provision "dolls" supports classification of the items at issue as ornaments.

Because the *Carborundum* factors as applied to the subject imports weigh so overwhelmingly in favor of one heading over another, and because the alternative *eo nomine* provision is defined so broadly as to undermine its specificity as to the items at issue, this Court holds that the more specific classification is that for Christmas ornaments.

Because the nutcrackers, wooden pull toys, and toy smokers are made of wood, they are classified properly as other Christmas ornaments of wood under subheading 9505.10.15, HTSUS. The porcelain and fabric mache Santa and the fabric mache Mrs. Claus are classified properly as other Christmas ornaments under subheading 9505.10.25, HTSUS.

B. *Subheading 9505.10.50, HTSUS: Cast Iron Stocking Hangers:*

The subject imports are cast iron figures of Santa Claus or other Christmas type scenes that sit on a shelf or mantle, with a hook hanging over the ledge to suspend a Christmas stocking. These can support up to approximately four pounds of weight.

Customs classified the items as other articles for Christmas festivities under subheading 9505.10.50, HTSUS, and imposed a tariff of 5.8%. Plaintiff urges that the merchandise should be classified as other Christmas ornaments under subheading 9505.10.25, HTSUS, which carries a tariff of 5%.

Because Customs classified these items under a residual subheading, other articles for Christmas festivities, the first issue is whether the imports come within the scope of the term "ornament." The Court finds that they do. These items adorn the house during Christmas. They complement another Christmas ornament, a Christmas stocking. They are painted in Christmas colors, and it is clear from viewing samples that their decorativeness is as important as their functionality. Their decorativeness is one reason these hangers are superior to hanging stockings by other means.

Although the hangers can be classified as either Christmas ornaments, or as other articles for Christmas festivities, the Court finds that the more specific classification is Christmas ornaments because the term "ornament" is narrow and better describes the hangers in comparison to the residual classification. GRI 3(a), HTSUS. Plaintiff therefore satisfies its burden of showing that these items were classified erroneously by Customs, and has demonstrated that subheading 9505.10.25, HTSUS, is the correct classification for these items.

C. *Subheading 6913.90.50, HTSUS: Terra Cotta Turkey Container, Earthenware Rabbit with Carrot:*

The subject imports are ceramic articles shaped either as turkeys, or as rabbits. The turkeys are hollowed in the middle, and are useful as planters or pen holders. The rabbits serve no purpose other than decoration.

Customs classified these items as statuettes and other ornamental ceramic articles of earthenware under subheading 6913.90.50, HTSUS, and imposed a tariff of 7%. Plaintiff urges that the terra cotta turkey container and the rabbit should be classified as other festive articles under subheading 9505.90.60, HTSUS, which carries a tariff of 3.1%.

The first matter for determination is whether the imports are within the common meaning of the term "ornamental ceramic articles." The Court finds that they are classifiable under Customs' tariff provision. They are made of ceramic and their purpose is to adorn the home. The Explanatory Notes indicate that the classification for ornamental ceramic articles "covers a wide range of ceramic articles of the type designed essentially for the interior decoration of homes * * * and outdoor ornaments (e.g., garden ornaments)." Explanatory Notes, 69.13. They include articles which have "no utility value but are wholly ornamental, and articles whose only usefulness is to support or contain other decorative articles or to add to their decorative effect." *Id.* at 69.13(A). Also, articles that are useful only for containing knick-knacks are ornamental for purposes of subheading 6913.90.50. *See* Explanatory Notes, 69.13(B) ("ornaments incorporating a purely incidental tray or container usable as a trinket dish or ashtray" are classifiable under heading 6913, HTSUS). The rabbits have no function other than as ornamentation. The turkey containers are hollowed to support other decorative items, such as a plant. The turkey containers also could be used as a trin-

ket dish. Both the rabbits and the turkey containers are, therefore, classifiable as ornamental ceramic articles.

Plaintiff argues that these items should be classified as festive articles because the items are associated closely with Thanksgiving and Easter. In addition, plaintiff argues that the Chapter Notes exclude items that are covered under Chapter 95 from defendant's classification, ornamental ceramic articles. Chapter 69 Notes, 2(ij), HTSUS. This Court finds, however, that these articles are not properly classified under Chapter 95 as festive articles. Although all of the items feature animals that are associated with a particular holiday or season, the items are not so peculiarly stylized so as to limit their use to that holiday. Plaintiff's own witness testified that Midwest designed the rabbit in response to customer requests for a decorative item that could be used year-around. The turkey container is likewise suitable for year-around use.

As to both of these items, the plaintiff has failed to satisfy its burden. Customs correctly classified these items as other ornamental ceramic articles under subheading 6913.90.50, HTSUS.

### D. *Subheading 8306.29.00, HTSUS: Heart-Shaped Wreath:*

The subject import is a metal wreath with dozens of small, heart-shaped decorations attached to it, painted bright red, with a hook, allowing the item to hang from a wall. The importer advertises the item to retailers in a catalogue that features Valentine's Day and Easter products. The wreath was designed by Midwest for decorating the home on Valentine's Day. Plaintiff's witnesses testified that the wreaths could be given year-around, but that they would be difficult to find in stores outside the Valentine's Day season, which is the only time they are offered to consumers. Inspection of the wreath confirms testimony as to their design and purpose.

Customs classified the wreath as statuettes and other ornaments of base metal under subheading 8306.29.00, HTSUS, and imposed a tariff of 5%. Plaintiff contends that the wreath is classified more appropriately as other festive articles under subheading 9505.90.60, HTSUS, which carries a tariff of 3.1%.

The wreath is described accurately by Customs' classification. The item is an ornament or decoration of base metal, designed for use around the home. The Explanatory Notes confirm that this heading is for "ornaments of base metal * * * of a kind designed essentially for decoration, e.g., in homes." Explanatory Notes, 83.06(B).

Plaintiff's proposed subheading, other festive articles under subheading 9505.90.60, HTSUS, also describes the wreath accurately. According to the Explanatory Notes to plaintiff's proposed subheading, decorations "which are traditionally associated with a particular festival are also classified [under heading 9505]." Explanatory Notes, 95.05(A)(1). Although the wreath itself is a modern innovation, the heart shape and the color red are traditionally associated with Valentine's Day.

The wreath could be classified under either Customs' or plaintiff's classification. Because heading 9505 is intended for ornamental articles associated with festivals, the Court finds it to be a more specific heading than heading 8306, statuettes or ornaments of base metal. In this regard, the Court notes that the Explanatory Notes anticipate that ornaments more specifically described by other headings, such as ornaments associated with particular festivals, are properly excluded from heading 8306. See Explanatory Notes, 83.06(B) ("It should be noted that the group does not include articles of more specific headings of the Nomenclature, even if those articles are suited by their nature or finish as ornaments."). The appropriate classification for the items at issue is, therefore, subheading 9505.90.60, HTSUS.

E. *Subheadings 6912.00.44 and 6912.00.48, HTSUS: Jack-O-Lantern Earthenware Mug and Jack-O-Lantern Earthenware Pitcher:*

The subject imports are mugs and pitchers made of glazed ceramic, with depictions of jack-o-lanterns. These items are painted in orange and black, colors typically associated with Halloween.

Customs classified the mugs as mugs and other steins of the ceramic tableware, kitchenware, and other household articles section under subheading 6912.00.44, HTSUS, and imposed a tariff of 13.5%. Customs classified the pitchers as other ceramic tableware, kitchenware, and other household articles under subheading 6912.00.48, HTSUS, and imposed a tariff of 11.5%. Plaintiff contends that these items are classified more appropriately as other festive articles under subheading 9505.90.60, HTSUS, which carries a tariff of 3.1%.

The first issue for determination is whether the subject imports are accurately described by Customs' classification. The Court finds that they are. The subject imports are functional and, according to the Explanatory Notes, heading 6912 applies to tableware that is functional. See Explanatory Notes, 69.12. The Explanatory Notes state that ceramic tableware should be classified as functional tableware under heading 6912 where the "tableware and domestic utensils are designed essentially to serve useful purposes, and any decoration is usually secondary so as not to impair the usefulness. If, therefore, such decorated articles serve a useful purpose no less efficiently than their plainer counterparts, they are classified in heading * * * [6912 as functional ceramic tableware]." Explanatory Notes, 69.13(B).

The subject imports are within Customs' classification. The items are tableware made of ceramic. Also, the items are functional within the meaning of heading 6912. Plaintiff argues that the pitcher and mug are primarily decorative because the items were not designed to withstand daily, year-around use. That the items are decorated and slightly more fragile does not substantially impair their usefulness. The items are classifiable under Customs' tariff provision.

Plaintiff argues that these items should be classified as other festive articles. The Court does not agree. Although the motif of the mug and

plate associate them with Halloween, heading 9505 nevertheless appears ill-suited to these particular items. The examples of items coming under heading 9505 as described by the Explanatory Notes are all non-functional items: false ears, cardboard trumpets, artificial snow, etc. Explanatory Notes, 95.05(A)(1). In addition, the HTSUS provides heading 6913 as the appropriate heading for decorative tableware. The Explanatory Notes do not contemplate plaintiff's proposed classification as a possible classification for tableware, functional or decorative. *See* Explanatory Notes, 69.13(B).

The Court observes that heading 6913, HTSUS, which the Court considers *sua sponte,* is not an appropriate classification because it is only for items whose usefulness is subordinate to their ornamental character. Explanatory Notes, 69.13(B). Examples of purely decorative tableware include miniatures, trays molded in relief "so that their usefulness is virtually nullified," and "ornaments incorporating a purely incidental tray or container usable as a trinket dish or ashtray." *Id.* The items at issue here are functional in nature; heading 6913 is an inappropriate classification.

The Court holds that Customs properly classified the pitchers and the mugs under subheadings 6912.00.48 and 6912.00.44, HTSUS, respectively.

## F. *Subheading 7013.99.50, HTSUS: Christmas and Easter Water Globes:*

The subject imports are glass globes which create the effect of a snow storm when shaken. The globes contain water, a figure of Santa Claus or a bunny, and white matter simulating snow. The globes' bases are made of resin and are decorated in colors associated with Christmas or Easter. The bases often support other figures that form part of the item.

Customs classified the globes as other glassware of a kind used for table, kitchen, toilet, and office indoor decoration with a value of between $0.30 to $3.00 each under subheading 7013.99.50, HTSUS, and imposed a tariff of 30%. Plaintiff contends that the globes should be classified as other Christmas ornaments under subheading 9505.10.25, HTSUS, with a tariff of 5%; or, alternatively, as other articles of plastics under subheading 3926.90.90, HTSUS, with a tariff of 5.3%.

Customs argues that GRI 3(b) controls the classification of these globes because they are made from a composite of different materials. Pursuant to GRI 3(b), plaintiff argues that the essential character of the globes are defined by the water globe portion. The Court believes, however, that these items can be classified pursuant to GRI 3(a), which directs the Court to select the classification that most specifically describes the product. The items are not defined only by the globe portion. The base, in terms of size, weight, and decoration, lends substantial character to the items at issue. The items presented at trial demonstrate that the base is often the heaviest portion of the item; and it may have an independent figurine attached to it that is often larger

than the water globe.[3] No one single feature defines the essential character of the globes. GRI 3(b) cannot guide this determination if the product can be classified more descriptively as a whole unit. If a determination under GRI 3(a) is possible, it controls.

The Court next considers whether the subject imports are within the common meaning of the term "glassware." The Explanatory Notes indicate that "glassware" has a broad definition. It may include paperweights, inkwells, book ends, containers, ashtrays, and souvenirs bearing views. Explanatory Notes, 70.13(3), (4). Given this broad definition, these items come within the term "glassware."

Plaintiff contends that the globes should be categorized as other Christmas ornaments; or, alternatively, as other articles of plastics.

Addressing the latter first, the Court determines that subheading 3926.90.90, HTSUS, for other articles of plastic, bears no relationship to the item described. The articles listed under heading 3926 are mostly industrial articles and miscellaneous goods that defy better categorization. "Other articles of plastics" is simply not a descriptive category for the items at issue. Moreover, the Chapter 39 Notes explicitly exclude festive articles from its coverage. Chapter 39 Notes, 2(u), HTSUS. The Court finds that plaintiff has failed to demonstrate that subheading 3926.90.90, HTSUS, provides the more specific description of the items at issue.

The Court now turns to plaintiff's alternative proposed classification, other Christmas ornaments under subheading 9505.10.25, HTSUS. Evidence presented by plaintiff at trial demonstrates that the water globes are marketed seasonally and are decorated in motifs associated with either Christmas or Easter; their purpose is to decorate the home during these holidays.

Classification of the imports under heading 9505 is also supported by the Chapter 70 Notes, which explicitly exclude items from Chapter 70 that are covered under Chapter 95. Chapter 70 Notes, 1(f), HTSUS.

When the globe and base are viewed as a unit, the most specific description per GRI 3(a) is as an ornament classifiable under heading 9505. The term "glassware" only describes a portion of the item, and its applicability does not prevent this Court from finding that another classification more specifically describes the subject imports when they are viewed as whole units.

The Court finds, therefore, that the Easter globes are properly classified as other festive articles under subheading 9505.90.60, HTSUS, and that the Christmas related water globes are properly classified as other Christmas ornaments under subheading 9505.10.25, HTSUS.

---

[3] This Court expresses no opinion regarding water globes that are not at issue in this case, where the motif is not associated with a holiday and the base of the item does not represent a substantial portion of the item.

G. *Subheading 9505.10.50, HTSUS: Santa with Chimney Smoker,*
   *Fabric Mache Santa with Bag of Toys, Fabric Mache Scanda Klaus,*
   *Fabric Mache MacNicholas, Porcelain Santa with Light-up Tree:*

The subject imports are a Santa with chimney smoker,[4] and various fabric mache Santa Claus figures, some of which are portrayed in different cultural traditions.[5] The cultural Santa figures stand approximately one foot tall on wooden bases.

Customs classified the subject imports as other articles for Christmas festivities under 9505.10.50, HTSUS, and imposed a tariff of 5.8%. Plaintiff urges that the Santa with chimney smoker should be classified under subheading 9505.10.15, HTSUS, as Christmas ornaments made of wood, which carries a tariff of 5.1%, and the other imports should be classified as other Christmas ornaments under 9505.10.25, HTSUS, which carries a tariff of 5%.

Because Customs classified these items under a residual subheading, other articles for Christmas festivities, the first issue is whether the imports come within the scope of the term "ornament." This Court finds that they do. They adorn the house during Christmas. Their use, sale, and purpose are limited to the Christmas season.

Although the items can be classified as either Christmas ornaments, or as other articles for Christmas festivities, the Court finds that the more specific classification is Christmas ornaments because the term "ornament" is narrow and better describes the items in comparison to the residual classification. GRI 3(a), HTSUS. Plaintiff, therefore, satisfies its burden by showing that these items were erroneously classified by Customs. The Santa with chimney smoker is properly classified under subheading 9505.10.15, HTSUS, and the other imports at issue are properly classified under subheading 9505.10.25, HTSUS.

H. *Subheading 9505.10.40, HTSUS: Various Resin Figures:*

The subject imports consist of resin figures of Santa Claus or merrymakers in various poses: hooded Santa roly-poly, figures decorating a Christmas tree, Santa in a sleigh, Santa with tree, old fashion Santa figure, Santa with deer, and Santa sewing an American flag.

Customs classified these as other plastic articles for Christmas festivities under 9505.10.40, HTSUS, and imposed a tariff of 8.4%. Plaintiff urges that these should be classified as other Christmas ornaments under 9505.10.25, HTSUS, which carries a tariff of 5%.

Because Customs classified these items under a residual subheading, other articles for Christmas festivities, the first issue is whether the imports come within the scope of the term "ornament." This Court finds

---

[4] This smoker is similar to the Santa with toys smoker addressed in Part II.A of this opinion, which Customs classified as a doll under subheading 9502.10.40, HTSUS, except that this smoker stands beside a chimney. This difference apparently influenced Customs to classify them differently.

[5] The fabric mache Santas are similar to the fabric mache Mrs. Claus addressed in Part II.A of this opinion, which Customs classified under subheading 9502.10.40, HTSUS, as a doll. Mrs. Claus differs from Santa only as to gender. Apparently, this compelled Customs to classify Mr. and Mrs. Claus differently. The Court notes that the gender of the import has no bearing on its proper classification. *See Hasbro Indus., Inc. v. United States,* 7 Fed. Cir. (T) 110, 879 F.2d 838 (1989) (affirming Customs classifying G.I. Joe as a "doll" within the common meaning of the TSUS).

that they do. They adorn the house during Christmas. All of the samples presented at trial are representations of Santa Claus or other holiday figures. Evidence presented at trial showed that their use and time of sale are limited to the Christmas season.

Although the items can be classified as either Christmas ornaments, or as other plastic articles for Christmas festivities, the Court finds that the more specific classification is Christmas ornaments because the term "ornament" is narrow and better describes the items in comparison to the residual classification. GRI 3(a), HTSUS. Plaintiff, therefore, satisfies its burden by showing that these items were erroneously classified by Customs, and has demonstrated that subheading 9505.10.25, HTSUS, is the correct classification.

CONCLUSION

For the foregoing reasons, the Court rules in favor of the plaintiff in part, and in favor of the defendant in part. A separate judgment and order thereon will be entered accordingly.